PEOPLE v POMEROY

PEOPLE v FULCHER

Docket Nos. 77-681, 77-702. Submitted June 14, 1978, at Lansing.—
Decided February 5, 1979. Leave to appeal applied for.

James M. Pomeroy was convicted in district court of operating a
motor vehicle while his ability to do so was impaired due to the
consumption of intoxicating liquor, in violation of the Michigan
Vehicle Code. His conviction was upheld on appeal to the
Tuscola Circuit Court, Martin E. Clements, J.

Jessie B. Fulcher was convicted in district court of operating
a motor vehicle while his ability to do so was visibly impaired,
in violation of the Uniform Traffic Code for Cities, Townships,
and Villages. His conviction was also upheld on appeal to the
Tuscola Circuit Court, Norman A. Baguley, J.

Both defendants appealed by leave granted and the appeals
were consolidated for hearing and decision. The principal issue
in each appeal is whether actual physical motion of a motor
vehicle is required for conviction under the laws they were
found guilty of violating. *Held:*

An intoxicated person who exercises actual bodily restraining
or directing influence over the machinery of an automobile
which would put it in motion is in actual physical control of
the automobile and may be prosecuted under the drunk driving
provisions of the Vehicle Code and the Uniform Traffic Code.
The term "operate" is not limited to situations where a motor
vehicle is being propelled.

Affirmed.

M. J. KELLY, J., would construe the term "operate" more
narrowly, from the substantive provisions of the impaired
driving offense rather than from a statutory definition of

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 7 Am Jur 2d, Automobiles and Highway Traffic § 256.
What constitutes driving, being in control of, or operating a motor
vehicle within statute making such act, while intoxicated, an
offense. 47 ALR2d 570.
[3] 73 Am Jur 2d, Statutes §§ 293, 294.
[5] 7 Am Jur 2d, Automobiles and Highway Traffic § 330.

"driver" as does the majority. Under Judge KELLY's definition, defendant Pomeroy, who the evidence indicates was merely "sleeping it off" in a friend's automobile with no intention of actually driving the vehicle, did not engage in conduct proscribed by the statute and his conviction should be vacated. The circumstances under which defendant Fulcher was found by police, however, were sufficient to justify an inference that he had violated the law, even under the more narrow construction suggested by Judge KELLY.

### OPINION OF THE COURT

1. AUTOMOBILES — STATUTES — VEHICLE CODE — DRIVERS — OPERATORS.

The language of the Michigan Vehicle Code definitions of "driver" and "operator" indicates that the Legislature did not wish to distinguish between those terms in all cases; a person who exercises actual physical control over a motor vehicle can be found to be driving or operating that vehicle (MCL 257.13, 257.36; MSA 9.1813, 9.1836).

2. AUTOMOBILES — CRIMINAL LAW — INTOXICANTS — DRUNK OR IMPAIRED DRIVERS — AUTOMOBILE IN MOTION.

An intoxicated or impaired person is in "actual physical control" of an automobile and may be prosecuted under the drunk or impaired driving provisions of the Vehicle Code even though the vehicle is not in motion where the person exercises actual bodily restraining or directing influence over the machinery of an automobile which would put it in motion.

### DISSENT IN PART, CONCURRENCE IN PART BY M. J. KELLY, J.

3. AUTOMOBILES — CRIMINAL LAW — DRUNK OR IMPAIRED DRIVERS — VEHICLE CODE — NARROW CONSTRUCTION.

*The drunk or impaired driving provisions of the Michigan Vehicle Code, as criminal legislation, should be narrowly construed, because a person should not be punished for doing an act unless it clearly appears that his conduct comes within both the spirit and the letter of the law prohibiting that conduct.*

4. AUTOMOBILES — CRIMINAL LAW — IMPAIRED DRIVERS — EVIDENCE.

*A person who was found by police asleep in an automobile which was legally parked, with the engine running and the lights out, should not be convicted of operating a motor vehicle while visibly impaired where all of the evidence presented is consistent with the defendant's allegations that he entered the auto-*

*mobile only to sleep and turned the engine on only to operate the heater, and where every inference derived from the defendant's testimony suggests that he had no intention of driving the automobile.*

5. AUTOMOBILES — CRIMINAL LAW — IMPAIRED DRIVERS — EVIDENCE.

*Cumulative circumstantial evidence was sufficient to permit the inference that a defendant had driven his automobile while impaired where he was found asleep at the wheel with the car partially in a ditch, with its engine running, with the presence of a strong odor of intoxicants, and no evidence presented of the presence of any other person who could have driven the car to the place where it was found.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Patrick R. Joslyn,* Prosecuting Attorney (by *Keith D. Roberts,* Assistant Attorney General, Prosecuting Attorneys Appellate Service), in Pomeroy, and *David N. Andreychuk,* City Attorney, City of Vassar, in Fulcher.

*Henry L. Greenwood,* for defendants.

Before: D. E. HOLBROOK, P.J., and M. J. KELLY and P. J. MARUTIAK,* JJ.

P. J. MARUTIAK, J. On May 8, 1975, defendant Pomeroy was tried before a jury and convicted of unlawfully operating a motor vehicle while his ability to do so was impaired due to the consumption of intoxicating liquor. MCL 257.625b; MSA 9.2325(2).[1] He was fined $100 and placed on probation. On December 9, 1976, his conviction was affirmed on appeal to the Tuscola County Circuit Court.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] "A person shall not operate a vehicle upon a highway or any other place open to the general public, including an area designated for the parking of motor vehicles, within this state when, due to consumption of intoxicating liquor * * * the person has visibly impaired his ability to operate the vehicle."

Defendant Fulcher appeals his conviction under § 5.15b of the Uniform Traffic Code for Cities, Townships, and Villages[2] of operating a motor vehicle while his ability to do so was visibly impaired. Defendant Fulcher was convicted in a district court bench trial and was sentenced to 2 years probation, given a $100 fine and ordered to pay $100 court costs. He was also sentenced to 30 days in jail, to be served at the beginning of his probation, and ordered to serve an additional 30 days at the end of his probation, with the proviso that the final 30 days would be suspended if the terms of his probation were satisfactorily performed. Upon appeal to the Tuscola County Circuit Court, his conviction was affirmed.

Defendant Pomeroy's conviction arose out of the following facts. On January 27, 1975, deputies of the Tuscola County Sheriff's Department came upon Pomeroy asleep and slumped over the steering wheel of an automobile that was legally parked in front of a bar in the Village of Unionville. His head was resting against the vehicle's horn, which was blowing.

The vehicle's engine was running and its heater was on but its standard transmission was in neutral. No interior or external lights were on.

One of the officers attempted to awaken Pomeroy by tapping on the window of the automobile. Unable to arouse Pomeroy, the officer opened the door of the automobile and turned off its engine. He then removed a beer can from between the legs of Pomeroy.

---

[2] See MCL 257.951 et seq.; MSA 9.2651 et seq. Section 5.15b of the Uniform Traffic Code for Cities, Townships, and Villages states:

"A person shall not operate a vehicle on a highway, or street, or any other place open to the general public, including an area designated for the parking of motor vehicles, when, due to the consumption of intoxicating liquor * * * he has visibly impaired his ability to operate the vehicle." 1976 AACS R 28.1415b.

Pomeroy awoke at this point, pressed the vehicle's clutch to the floor, moved the gearshift lever from neutral through the gears and back to neutral, and reached for the key to restart the vehicle's motor. The deputy stopped him from doing the latter. The officers who arrested Pomeroy testified at his trial that at no time did they see him actually move the motor vehicle.

Defendant Pomeroy testified in his own behalf at trial. He stated that on the evening of the incident he had gone with a friend to the bar where he had too much to drink and fell asleep at one of the tables. He asked his friend for the keys to the latter's automobile and stated that he would go sleep in it. Because it was cold and he had only a light coat he started. the car and turned on its heater before falling asleep. He was awakened by the deputies who found him.

Defendant Fulcher was found asleep in his car by an officer of the City of Vassar Police Department on the morning of November 15, 1975, at approximately 5 a.m. Defendant Fulcher's automobile was motionless, however, it was in gear and its engine was idling. The rear portion of the car was in a ditch but its front end was on a public roadway. After turning off the engine and taking the vehicle out of gear, the officer noticed a strong odor of intoxicants. He then awakened Fulcher and placed him under arrest for driving under the influence of intoxicating liquor. The officer admitted at trial that he did not see Fulcher actually drive the car.

Both defendants in these cases, which have been consolidated on appeal, ask the Court to consider whether actual physical motion of a motor vehicle is required for conviction under the laws they were found guilty of violating.

Both the statute, under which defendant Pomeroy was convicted, and the ordinance, under which defendant Fulcher was convicted, make it unlawful for a person to "operate" a motor vehicle when the ability to do so is visibly impaired due to the consumption of intoxicating liquor. We hold that the term "operate" as it is used in these laws does not require physical motion of a motor vehicle.

Michigan appellate courts have not been called upon previously to decide what constitutes driving or operating of a motor vehicle for purposes of the drunk driving provisions of the Michigan Vehicle Code. The Vehicle Code does not define the terms "operate" or "operating", however, it does define "operator" as "every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway".[3] Similarly, the code does not define the terms "drive" or "driving", but it does define "driver" as "every person who drives or is in actual physical control of a vehicle".[4]

The parallel language in the definitions of these terms, which states that one need only be in actual physical control of a motor vehicle to be a driver or an operator, indicates that the Legislature did not wish to distinguish between these terms in all situations. Consistent with the similar construction of the terms "driver" and "operator", a person who exercises actual physical control over

[3] MCL 257.36; MSA 9.1836. In 1978 PA 139, the Legislature redefined the term "operator" in the following manner:

" 'Operator' or 'operating' means a person who drives or is in actual physical control of a vehicle regardless of whether or not the person is licensed under this act as an operator or a chauffeur."

MCL 257.35a; MSA 9.1835(1). In doing so, the Legislature did not repeal its former definition of "operator". The Uniform Traffic Code, under which defendant Fulcher was prosecuted, defines neither the term "operate" nor "operator". See 1976 AACS R 28.1001 et seq.

[4] MCL 257.13; MSA 9.1813. The Uniform Traffic Code provides a similar definition of this term. 1976 AACS R 1.010.

the mechanisms of a motor vehicle can be found to be driving or operating that vehicle.

In fact, Michigan appellate courts often use the terms "drive" and "operate" interchangeably when disposing of appeals brought upon conviction under MCL 257.625; MSA 9.2325, which proscribes the driving of a motor vehicle while under the influence of intoxicating liquor, and under MCL 257.625(b); MSA 9.2325(2), the statute involved in this case, which prohibits the operation of a motor vehicle while the ability to do so is impaired due to the consumption of intoxicating liquor. See *People v Reeder,* 370 Mich 378; 121 NW2d 840 (1963), *People v Tracy,* 18 Mich App 529; 171 NW2d 562 (1969), *People v Thornton,* 9 Mich App 536; 157 NW2d 490 (1968), *People v Collett,* 8 Mich App 419; 154 NW2d 531 (1967). More telling on this point is the decision of our Supreme Court in *People v Lambert,* 395 Mich 296; 235 NW2d 338 (1975), which characterized the offense covered by the latter statute as "impaired driving" and which approved of the following jury instruction distinguishing between the offenses covered by these statutes on the basis of the amount of alcohol consumed only:

" 'The distinction between the crime of driving under the influence of intoxicating liquor and the lesser included offense of driving while ability is visibly impaired is the degree of intoxication which the people must prove.

"'To prove driving under the influence of intoxicating liquor, the people must prove that defendant's ability to drive was substantially and materially affected by consumption of intoxicating liquor.

" 'To prove driving while ability is visibly impaired, the people must prove that defendant's ability to drive was so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability

than would an ordinary, careful and prudent driver.
Such weakening or reduction of ability to drive must be
visible to an ordinary, observant person.'" 395 Mich at
305.

Thus, we conclude that the terms "drive" and
"operate" comprehend the same type of actions for
purposes of these two statutes. The question re-
mains, however, whether motion of a motor vehi-
cle is required for conviction under these two
statutes.

Although the word "operating" has not been
defined for purposes of the drunk driving provi-
sions of the Vehicle Code, it has been given atten-
tion in other contexts. In *Flynn v Kramer,* 271
Mich 500; 261 NW 77 (1935), it was held that
under a statute providing for service of process in
civil actions upon nonresident operators of motor
vehicles in this state, the term "operate" signified
a personal action in working the mechanism of an
automobile.[5] In *Orlowski v Jackson State Prison,*
36 Mich App 113, 116; 193 NW2d 206 (1971), it
was held that negligent operation of a motor vehi-
cle, as that concept is used in the governmental
immunity statute,[6] "may occur even though the
vehicle is standing still as long as it is being used
or employed in some specific function or to pro-
duce some desired work or effect".[7] In *Flager v
Associated Trunk Lines, Inc,* 52 Mich App 280; 216
NW2d 922 (1974) *lv den* 392 Mich 810 (1974), the
Court held that where two persons agree to exer-
cise some measure of physical control over the
operation of a motorscooter, that both become an

[5] See MCL 257.403; MSA 9.2103 for the present version of this
statute.

[6] MCL 691.1405; MSA 3.996(105).

[7] See also *Wells v Dep't of Corrections,* 79 Mich App 166; 261 NW2d
245 (1977), *McNess v Scholley,* 46 Mich App 702; 208 NW2d 643
(1973).

"operator" as that term is defined in the Vehicle Code. MCL 257.36; MSA 9.1836.

Thus, when called upon in other contexts to determine the scope of the term "operate", Michigan appellate courts have not limited that term to situations where a motor vehicle was being propelled. In recognition of the important public policy underlying the legislative prohibition against driving while under the influence or while impaired by intoxicants, we find that a similar construction of the term "operate" is required here.[8] Therefore, where an intoxicated person exercises actual bodily restraining or directing influence over the machinery of an automobile which would put it in motion, that person is in "actual physical control" of that vehicle and may be prosecuted under the drunk driving provisions of the Vehicle Code.[9]

Affirmed.

_____

[8] This public policy was expressed in *People v Tracy*, 18 Mich App 529, 532; 171 NW2d 562 (1969), where the Court stated:

"Since we may reason that it is the intention of the legislature to protect the general public from operators of motor vehicles who are under the influence of alcohol, it is logical to apply the statute to drinking drivers who are attempting to drive their vehicles in areas open to the general public which are not normally used by sober drivers for normal travel."

*Tracy* involved a drunk driving prosecution of a person who was attempting to extricate his motor vehicle from a snowbank on a lawn in front of a dormitory on the campus of Wayne State University. The question involved in that case was whether the campus site was a "place open to the general public", as that phrase is used in MCL 257.625; MSA 9.2325. Although the scope of the term "operate" was not before the Court in *Tracy*, we note that the Court remanded that case for trial even though the defendant there was not actually moving his automobile.

[9] This result finds support in cases from other jurisdictions. See *Jacobson v State*, 551 P2d 935 (Alaska, 1976), *State v Webb*, 78 Ariz 8; 274 P2d 338 (1954), *State v Parker*, 81 Idaho 51; 336 P2d 318 (1959), *Prudhomme v Hults*, 27 App Div 2d 234; 278 NYS2d 67 (1967), *Commonwealth v Kloch*, 230 Pa Super 563; 327 A2d 375 (1974), *Commonwealth v Kriner*, 234 Pa Super 230; 338 A2d 683 (1975), *Hester v State*, 196 Tenn 680; 270 SW2d 321; 47 ALR2d 568 (1954), and *Williams v Petersburg*, 216 Va 297; 217 SE2d 893 (1975).

D. E. HOLBROOK, P.J., concurred.

M. J. KELLY, J. *(dissenting in part, concurring in part).* I respectfully dissent.

The issue presented in the Pomeroy case arose from the lower court's jury instruction. After the close of proofs, the court instructed that "a person operates a motor vehicle when he is in actual physical control of a motor vehicle". The jury, after deliberation, returned a verdict of guilty as to Count I, a charge of operating a motor vehicle at a time while visibly impaired due to the consumption of intoxicating liquor, and guilty as to Count II, possessing alcoholic liquor in an open container in the passenger compartment of a motor vehicle. I would affirm defendant Pomeroy's conviction on Count II, for there was uncontroverted testimony that two open cans of beer were seized from the car. I write to express my disagreement with the majority's definition of the statutory term "operate", as that term is used in MCL 257.625b; MSA 9.2325(2) and in § 5.15b of the UTC for municipalities. The majority defines "operate" as being "actual physical control" of a motor vehicle. I disagree because the breadth of this definition serves to extend MCL 257.625b; MSA 9.2325(2) to conduct which is outside the scope and purpose of the statute.

The general purpose of driving under the influence statutes, such as the one before us, is to protect the general public from drunk and/or drugged drivers. *People v Tracy,* 18 Mich App 529, 532; 171 NW2d 562 (1969). The majority's definition of "operating" is derived from the statutory definition of "driver" as "every person who drives or is in actual physical control of a vehicle" contained in MCL 257.13; MSA 9.1813. My objection is that "actual physical control" is derived from a

definitional provision rather than the substantive provision outlining the offense of impaired driving. As criminal legislation, the Michigan Vehicle Code should be narrowly construed, for a person cannot be punished for doing an act unless it clearly appears that his conduct comes within both the spirit and the letter of the law prohibiting it. As stated in *People v Samuel Lee*, 66 Mich App 5, 10; 238 NW2d 397 (1975):

" 'It is a well-settled rule of law that no one can be punished for doing an act unless it clearly appears the act sought to be punished comes clearly within both the spirit and letter of the law prohibiting it.

\* \* \*

"Defendant ought not to be convicted unless he is clearly and unequivocally within the language of a statute which by its terms covers his case.' "

I do not think that defendant Pomeroy's action in "sleeping it off" in his friend's car is conduct which is "clearly and unequivocally" proscribed by the spirit and letter of the drunk driving statutes. There is no evidence that the defendant ever drove or intended to drive the car; rather, he was found asleep, slumped over the steering wheel with his head against the rim. At trial, the defendant testified that he had been drinking that day at a local tavern and that, when he started to fall asleep, he asked a friend to give him the keys to his (the friend's) car so that he could sleep in the car. The defendant further testified that he turned the car on in order to operate the heater. There was evidence that the weather was cold that night and that defendant was wearing only a light coat and no gloves. At the time, the car was legally parked and neither exterior nor interior lights . were on. Defendant did not move the car.

Every inference derived from this testimony suggests that defendant had no intention to drive the car. Similarly, the people's evidence, that defendant pressed the clutch, moved the gearshift to neutral and reached for the key to start the car after the arresting officer had turned the car off, is as consistent with turning on the heater as it is with driving the car. Under the "actual physical control" definition adopted by the majority, defendant's conduct in simply turning on the car's ignition in order to operate its heater constituted operation of a motor vehicle, and thus, subjected him to the penalties of drunk driving statutes. This conduct, in my opinion, was not intended to be proscribed by the drunk driving statutes. I would reverse.

As to the companion case, Fulcher, I concur in the majority's result although for a different reason. The majority affirms Fulcher's conviction for driving while visibly impaired on the basis of its definition of the statutory term "operate". I would affirm his conviction, not for the reason that his conduct constituted "actual physical control", but because I believe that the circumstantial evidence presented below was sufficient to permit the trial court, sitting as trier of fact, to reasonably infer that defendant had driven while visibly impaired, even though the arresting officer had not observed defendant driving the car.

Defendant Fulcher, like defendant Pomeroy, was also found asleep in a car, slumped over the steering wheel with his feet on the floor board. The arresting officer's testimony indicates that the car's engine was running and the car was idling in gear. The arresting officer testified as to the presence of a strong odor of intoxicants. However, unlike Pomeroy who was legally parked, the rear

portion of Fulcher's car was in a ditch and his front wheels were on the public roadway. In addition, furrows in the snow indicated the point where the car had left the paved portion of the road. No evidence was presented indicating the possible presence of any other person who might have driven the defendant's car to that point on the highway. Although there was no eyewitness testimony that it was defendant Fulcher who had driven his car into the ditch, I would hold that the cumulative impact of this circumstantial evidence was sufficient, even under a definition of "operate" narrower than that adopted by the majority, to permit the inference that defendant had violated MCL 257.625b; MSA 9.2325(2).

In passing, I note that the proposition that circumstantial evidence is sufficient to sustain a conviction for driving while visibly impaired has recently been embodied and sanctioned in statute. An amendment to MCL 257.625; MSA 9.2325 allows a police officer to arrest a defendant for that offense on the basis of reasonable cause which could, I believe, be supplied by circumstantial evidence. That amendment states:

"A peace officer may, without a warrant, arrest a person when the peace office *[sic]* has reasonable cause to believe that the person was, at the time of an accident, the driver of a motor vehicle involved in the accident and was driving the vehicle upon a public highway of this state while under the influence of intoxicating liquor." 1978 PA 391.

For the reasons outlined above, I would affirm defendant Fulcher's conviction while vacating that of defendant Pomeroy.