[No. S017249. May 6, 1991.]

BARRIE GRAY MERCER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

754

**COUNSEL**

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and Martin H. Milas, Deputy Attorneys General, for Defendant and Appellant.

John W. Witt, City Attorney (San Diego), Stuart H. Swett and Mary T. Nuesca, Deputy City Attorneys, as Amici Curiae on behalf of Defendant and Appellant.

Phillip A. Rafferty and Owen P. Rafferty for Plaintiff and Respondent.

## OPINION

LUCAS, C. J.—The superior court issued a writ of mandate directing the Department of Motor Vehicles (DMV) to set aside its order revoking Barrie Gray Mercer's driving privileges after Mercer refused to submit to chemical testing following his arrest for driving under the influence of alcohol. (See Veh. Code, § 23157, subd. (a)(1)[1] [driver's implied consent to chemical testing following "lawful arrest" for violation of § 23152]; § 23152, subd. (a) [hereafter section 23152(a)] [unlawful for any person who is "under the influence" of alcohol or drugs to "drive a vehicle"]; § 13352, subd. (a)(3) [suspension or revocation of driving privilege for refusal to submit to testing pursuant to § 23157].) The Court of Appeal reversed and directed the superior court to reinstate the revocation order.

We granted review to resolve a conflict in the Court of Appeal concerning interpretation of the implied consent (§ 23157) and related license revocation (§ 13353) statutes. Several courts have held that observed volitional *movement* of a vehicle is required before a person's driving privilege may be suspended or revoked for refusal to submit to chemical testing. (E.g., *Music* v. *Department of Motor Vehicles* (1990) 221 Cal.App.3d 841 [270 Cal.Rptr. 692] [*Music*].) By contrast, the present Court of Appeal, claiming support for its view in *Henslee* v. *Department of Motor Vehicles* (1985) 168 Cal.App.3d 445 [214 Cal.Rptr. 249] [*Henslee*], holds that observed movement of a vehicle is not required as a condition of suspension or revocation of driving privileges for failure to submit to testing. We conclude the *Music* approach correctly interprets the statutes, and accordingly we reverse the decision of the Court of Appeal.

We emphasize at the outset the narrow scope of our inquiry and holding. ▪ We do *not* hold that observed movement of a vehicle is necessary to support a conviction for "drunk driving" under section 23152. The lower courts have routinely upheld such convictions in the absence of evidence of observed movement of a vehicle. (See, e.g., *People* v. *Wilson* (1985) 176

---

[1] All future references are to the Vehicle Code unless otherwise indicated.

Cal.App.3d Supp. 1, 8-9 [222 Cal.Rptr. 540], and cases cited.) Nothing in this opinion calls in question the holdings of these cases.

■ Nor do we hold that observed volitional movement of a vehicle is a necessary condition of compelled chemical testing. Although the DMV and its amicus curiae seem to have ignored the fact, case law predating adoption of the implied consent statute continues to allow for such testing without a warrant, and without the consent of the person tested, so long as (i) the testing is incident to a lawful arrest, (ii) the circumstances require prompt testing, (iii) the arresting officer has reasonable cause to believe the arrestee is intoxicated, and (iv) the test is conducted in a medically approved manner. (*Schmerber* v. *California* (1966) 384 U.S. 757, 766-772 [16 L.Ed.2d 908, 914-917, 86 S.Ct. 1826] [*Schmerber*]; *People* v. *Superior Court* (1972) 6 Cal.3d 757, 761-765 [100 Cal.Rptr. 281, 493 P.2d 1145] [*Hawkins*].)

We address today only the narrow question of whether, under sections 23157 and 13353 *as presently written*, the state may suspend or revoke a driver's license for failure to submit to chemical testing in the absence of evidence of observed volitional movement of a vehicle.

## I. *Facts and Procedure*

At a revocation hearing held at Mercer's request pursuant to section 14100 et seq., the following facts were adduced: In response to calls from neighbors, a police officer found Mercer slumped over the steering wheel of his car. His seat belt was fastened, the car lights were on, and the engine was running. The car was legally parked against the curb of a residential street. Mercer awoke after the officer rocked the car and banged on it with a flashlight. According to the officer, when Mercer "finally [came] around, he started pulling gears [on the manual transmission] as if . . . in his mind, he was already driving or about ready to drive." Eventually Mercer ceased attempting to put the car in gear and rolled down the window, at which point the officer detected a heavy odor of alcohol on Mercer's breath and ordered him out of the car.

After Mercer stumbled to the sidewalk the officer observed his slurred speech and red, watery eyes. The officer arrested Mercer without a warrant for driving under the influence of alcohol (§ 23152(a)), and advised him that under the implied consent law he was obligated to submit to chemical testing, or suffer suspension or revocation of his driving privileges. Mercer refused to take any chemical test; he responded, "I wasn't driving." He was not subjected to a chemical test.

Mercer stipulated that he was properly advised of the implied consent law and that he refused the tests. The officer conceded the car never moved in his presence. The hearing officer found: the arresting officer had reasonable cause to believe Mercer had been driving a motor vehicle while under the influence of alcohol; Mercer was lawfully arrested; Mercer was properly advised of the consequences of his failure to submit to testing under the implied consent law; and Mercer refused to take any chemical test. The DMV notified Mercer that his driving privileges would be revoked for three years. (§ 13353, subd. (a)(3).)

After administrative review was resolved against Mercer he filed a petition for a writ of mandate (Code Civ. Proc., § 1094.5) seeking to reverse the revocation order. The superior court granted the writ, reasoning as follows: (i) Sections 23157 and 13353 predicate license suspension or revocation on a "lawful arrest" for violating the "drunk driving" statute, section 23152; (ii) one does not violate section 23152(a) unless one causes a vehicle to *move*; (iii) section 23152(a) is a misdemeanor; (iv) Penal Code section 836, subdivision 1, permits a warrantless arrest for a misdemeanor only if the arresting officer has reasonable cause to believe a misdemeanor offense was committed *in the officer's presence*; and (v) because the officer did not observe Mercer's car move, the warrantless arrest was unlawful, and accordingly the revocation was improper because the "lawful arrest" requirement of the implied consent law was not met.

As noted above, the Court of Appeal reversed. It reasoned that Mercer "exercised such a degree of control over the vehicle that he was driving within the meaning of section 23152, subdivision (a)," and that the offense was thus committed in the officer's presence. Accordingly, the court concluded the arrest was "lawful" and ordered that the revocation order be reinstated.

## II. *Analysis*

In *Schmerber, supra,* 384 U.S. 757, 766-772 [16 L.Ed.2d 908, 917-921], the high court held permissible the warrantless taking of a person's blood for the purpose of chemical testing to determine intoxication, "provided that the taking of the sample is done in a medically approved manner, is incident to a lawful arrest, and is based upon the reasonable belief that the person is intoxicated." (*Hawkins, supra,* 6 Cal.3d at p. 761, citing *Schmerber, supra.*) Shortly thereafter our Legislature enacted our implied consent law—former section 13353, the predecessor to section 23157.

In relevant part, the law today—and at the time of the offense—reads as it did when enacted in 1966. Section 23157, subdivision (a)(1) provides: "Any person who drives a motor vehicle is deemed to have given his or her

consent to chemical testing . . . for the purpose of determining the alcoholic content of his or her blood, . . . if *lawfully arrested* for any offense allegedly committed in violation of *Section 23152 or 23153*. The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23152 or 23153. The person shall be told that his or her failure to submit to . . . the required chemical testing will result in a fine [and various terms of license suspension or revocation, depending on the person's prior 'drunk driving' record]." (Italics added.)

Section 23152—one of the two substantive offenses referred to in section 23157—provides: "It is unlawful for any person who is under the influence of an alcoholic beverage or any drug . . . *to drive a vehicle*." (§ 23152(a), italics added.) The other substantive offense listed in section 23157 (§ 23153) contains identical operative language.[2]

Section 13353, subdivision (a), provides, "[i]f any person refuses the officer's request to submit to . . . a chemical test . . . pursuant to section 23157, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 . . . and that the person had refused to submit to . . . the test . . . after being requested by the officer, the [DMV] shall . . . (3) revoke the person's privilege to operate a motor vehicle for a period of three years if the refusal occurred within seven years of two or more separate violations of [other specified 'drunk driving' statutes], which resulted in convictions." Subdivision (c) of section 13353 provides for a hearing, if requested, on four issues, namely: "whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 . . . , whether the person was placed under arrest, whether the person refused to submit to . . . the test . . . after being requested by a peace officer, and whether . . . the person had been told that his or her driving privilege would be suspended or revoked if he or she refused to submit to . . . the test . . . ." (See § 13558, subd. (c)(1) [operative July 1, 1990].)

■ *Hawkins, supra*, 6 Cal.3d 757, explained the purpose and scope of our implied consent law: "Although it is clear under *Schmerber* that a person who has been lawfully arrested may have a blood sample forcibly removed without his consent, provided it is done in a reasonable, medically approved manner and provided further that the arresting officer had probable cause to believe that the arrestee was intoxicated, nevertheless such an episode remains an unpleasant, undignified and undesirable one.

---

[2] Section 23153 makes it illegal to "drive" a vehicle while under the influence of alcohol or drugs, and, when so driving, to proximately cause bodily injury to another person. (*Id.*, subd. (a); see also *id.*, subd. (b).) Because the operative language of the two sections is the same, future references in this opinion to section 23152(a) should be read to include section 23153.

"However, the shocking number of injuries and deaths on the highways caused by drunk drivers has compelled society to adopt extreme measures in response. By its enactment in 1966 of section 13353, the Legislature devised an *additional or alternative* method of compelling a person arrested for drunk driving to submit to a test for intoxication, by providing that such a person will lose his automobile driver's license for a period of six months if he refuses to submit to a test for intoxication. The effect of this legislation is to equip peace officers with an instrument of enforcement not involving physical compulsion. It is noteworthy that in so doing, the Legislature took pains to condition its use upon a lawful arrest for driving under the influence of intoxicating liquor and upon the reasonable belief of the peace officer that the arrestee was in fact so driving." (6 Cal.3d at pp. 764-765, italics added.)

As *Hawkins* (*supra*, 6 Cal.3d 757) makes clear, the implied consent statute—and its attendant license suspension or revocation "penalty"—is an adjunct to the preexisting, and still valid rule of *Schmerber, supra*, 384 U.S. 757. In other words, *regardless whether the terms of the implied consent statute are met*, forcible, warrantless chemical testing may occur under the authority of *Schmerber* if the circumstances require prompt testing, the arresting officer has reasonable cause to believe the arrestee is intoxicated, and the test is conducted in a medically approved manner incident to a lawful arrest. With this important understanding in mind, we turn to the question of whether license revocation is proper in this case.

Initially, we emphasize the narrow scope of our implied consent statute as presently written. In three important respects our implied consent statute is substantially more circumscribed than those of our sister states.

First, as our Courts of Appeal have correctly held, unless a person is "lawfully arrested" (§ 23157, subd. (a)(1)) for a violation of the substantive offense of section 23152, he or she is not subject to license suspension or revocation under sections 23157 and 13353. (See *Music, supra*, 221 Cal.App.3d at p. 847; *Padilla* v. *Meese* (1986) 184 Cal.App.3d 1022, 1026 [229 Cal.Rptr. 310] [*Padilla*]; *Henslee, supra*, 168 Cal.App.3d 445, 451; *Mueller* v. *Department of Motor Vehicles* (1985) 163 Cal.App.3d 681, 684 [210 Cal.Rptr. 14]; *Buttimer* v. *Alexis* (1983) 146 Cal.App.3d 754, 758 [194 Cal.Rptr. 603]; § 13353, subd. (a).) Most implied consent statutes in other states are significantly less restrictive. Many specify that the triggering arrest may be for "any" offense arising out of acts alleged to have been committed while the person was driving under the influence (see U.S. Dept. of Transportation, Driver Licensing Laws Ann. (1980) pp. 162-165 [hereafter Driver Licensing Laws]); others require only the physical act of "any" arrest, and still others do not expressly require an arrest at all. (See 4 Erwin, Defense of Drunk Driving Cases (3d ed. 1990) § 33.04, p. 33-51, fn. 20.)

Second, our Courts of Appeal correctly acknowledge that Penal Code section 836, subdivision 1, which permits a warrantless arrest for a misdemeanor only when the officer "has reasonable cause to believe that the person to be arrested has committed a public offense *in his presence*" (italics added), governs arrests that occur under the implied consent statute. (See *Music, supra,* 221 Cal.App.3d at pp. 847-848 [a warrantless "arrest for misdemeanor drunk driving . . . is invalid unless the police officer witnesses or perceives the act of driving under the influence"]; *Padilla, supra,* 184 Cal.App.3d 1022, 1026-1029; *Henslee, supra,* 168 Cal.App.3d 445, 451.) Our Legislature has enacted an exception to the common law rule of Penal Code section 836, subdivision 1, for "drunk driving" arrests made at or near an accident scene, or when a vehicle is found protruding into the street,[3] but neither exception applies when, as here, a vehicle is lawfully parked. Again, most states have statutes that are significantly less restrictive; many expressly exempt "drunk driving" arrests from the general rule that a warrantless arrest for a misdemeanor is permissible only when the arresting officer observes the offense occur *in the officer's presence.*[4]

Finally, California is one of only six states that condition operation of its implied consent law on the act of "driving" (as opposed to "operating," etc.) a vehicle. (Driver Licensing Laws, *supra,* at pp. 160-161; see, *post,* fn. 24.) And significantly, as explained below, California is one of only seven states that confines the substantive offense of "drunk driving" to the act of "driving" a vehicle. (*Post,* pp. 764-769.)

These attributes of our implied consent law, together and in combination, make our statute one of the narrowest, if not *the* narrowest, in the nation. Contrary to suggestions of the DMV and its amicus curiae, whether this is desirable or wise is not our duty to decide; our role is to construe the statute as enacted by our Legislature.

We now turn to the essential question posed in this case, namely, whether an officer may make a "lawful arrest" for "drunk driving" in violation of section 23152(a), if the arrestee's vehicle is lawfully parked and the officer has not observed the vehicle move. On this point the lower courts are

---

[3] Section 40300.5 allows an officer to make a warrantless misdemeanor arrest without having reasonable cause to believe an offense has been committed in the officer's presence, in two circumstances: arrest of a person "involved in a traffic accident" and arrest of a person "observed by a peace officer in or about a vehicle which is obstructing a roadway, when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage or any drug . . . ." (See also § 40300.6 [§ 40300.5 "shall be liberally interpreted . . . to permit arrests to be made pursuant to that section within a reasonable time and distance away from the scene of a traffic accident. . . ."].)

[4] (See, e.g., Idaho Code § 49-1405(b) & (c); Mo. Rev. Stat. § 577.039; Nev. Rev. Stat. § 484.791(1)(b) & (c); N.J. Rev. Stat. § 39:4-50.4a, par. 2; Ore. Rev. Stat. § 133.310(1)(e); 75 Pa. Cons. Stat. § 3731(c); Wash. Rev. Code § 10.31.100(3)(d).)

divided. One line of cases holds the statutes require that the arrestee's vehicle move, however short a distance, in the officer's presence. (*Music, supra,* 221 Cal.App.3d 841, 850; see also *Padilla, supra,* 184 Cal.App.3d 1022, 1029; *People* v. *Engleman* (1981) 116 Cal.App.3d Supp. 14, 19 [172 Cal.Rptr. 474]; *People* v. *Wilson, supra,* 176 Cal.App.3d Supp. 1, 8-9 [dictum].) The contrary view, embraced by the Court of Appeal in this case, holds "driving" is established under the statutes if the arrestee, in the officer's presence, " 'actively asserts control over a vehicle and takes every step necessary to resume travel along the public road.' " (Quoting *Henslee, supra,* 168 Cal.App.3d 445, 451-452; see also *People* v. *Hernandez* (1990) 219 Cal.App.3d 1177, 1183-1184 [269 Cal.Rptr. 21] [dictum].)

*Music, supra,* 221 Cal.App.3d 841, and the decisions supporting it, reasons that the phrasing of section 23152(a) (making it illegal for an intoxicated person "to drive a vehicle") discloses legislative intent that some vehicular movement, however small, be established as an essential element of the offense. The Court of Appeal below disagreed, asserting, "Any 'reasonable person' would construe the phrase "to drive a vehicle" . . . as encompassing any act or action which is necessary to operate the mechanism and controls and direct the course of a motor vehicle.' " (Quoting *Wilson, supra,* 176 Cal.App.3d Supp. 1, 6.)

The Court of Appeal concluded, "Where an intoxicated driver actually asserts such a degree of control over a vehicle stopped along a curb on a public street with its engine running that it is plain he will momentarily resume travel along the public roads, he is 'driving' in the sense intended in section 23152, subdivision (a) and provides a percipient police officer 'reasonable cause to believe [the driver] has committed a public offense in his presence.' (Pen. Code, § 836, subd. 1.) The mere fact that the vehicle never moved in [the officer's] presence does not invalidate [Mercer's] arrest for drunk driving under the circumstances of this case." The court noted that the Legislature's policy of deterring drunk driving supported a broad interpretation of the word "drive," and suggested that absurd results would occur if police officers were made to wait for an intoxicated person to "lurch [the vehicle] forward" before making an arrest for drunk driving.

We are unpersuaded. Addressing the last point first, the Court of Appeal (and the DMV as well) appears to have overlooked the fact that the officer did not have to wait for Mercer to move his vehicle before making an arrest. On these facts, Mercer could have been arrested for attempted drunk driving (*People* v. *Garcia* (1989) 214 Cal.App.3d Supp. 1, 5 [262 Cal.Rptr. 915]) or public intoxication (Pen. Code, § 647, subd. (f); see *People* v. *Engleman, supra,* 116 Cal.App.3d Supp. 14, 19, and cases cited), and thereafter—pursuant to *Schmerber, supra,* 384 U.S. 757—he could have been forced to

submit to a chemical test, *regardless* whether he met the separate requirements of section 23157 (i.e, "lawful arrest" for a violation of § 23152).

Beyond doubt, the Court of Appeal correctly perceived that there is a legislative policy favoring detection and prevention of drunk driving. (See Stats. 1985, ch. 735, § 1, p. 2386 [legislative intent regarding §§ 13353 & 23157].) And certainly this policy should be advanced to the extent permitted under the statutes as written. ■ The first step in our analysis, however, is to focus on the words used by the Legislature in order to determine their traditional and plain meaning. (See, e.g., *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) ■ In doing so we are guided by the rule that because section 23152 is a penal statute, it should be strictly rather than broadly construed. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

In everyday usage the phrase, "to drive a vehicle," is understood as requiring evidence of volitional movement of a vehicle. Numerous dictionary definitions—including Webster's Third New International Dictionary (1981), cited by the Court of Appeal below, support a definition of "drive" that includes movement. (See, e.g., *id.*, at p. 692.)[5] We believe these definitions are consistent with the usual and ordinary understanding of that term, and suggest the sense in which the word was intended by the Legislature in the present context.

The use of similar terms in related statutes also suggests the Legislature intends the word "drive" in section 23152(a) to have a narrow rather than broad scope. Section 305, defining the noun "driver" for purposes of construing the Vehicle Code, provides, "A 'driver' is a person who drives *or* is in actual physical control of a vehicle. . . ." Section 13353.2 likewise states the DMV "shall immediately suspend the privilege of any person to operate a motor vehicle if the person was driving *or* was in actual physical control of a motor vehicle" while having a prescribed blood-alcohol level. Similarly, section 12501 states that certain persons "driving *or* operating" vehicles are exempt from the general rule requiring a "driver's license." (*Id.*, subds. (b) & (c).) The use of the disjunctive "or" in these statutes suggests the Legislature recognizes a distinction between one who "drives" a vehicle and one who "operates" or "is in actual physical control of" a vehicle, and that the

---

[5] "1: to set and keep in motion or in action through application of some amount of force: a: to impart an onward or forward motion to by expenditure of physical force . . . b: to impart violent motion or great impetus to . . . ." (See also *Flournoy* v. *State* (1962) 106 Ga.App. 756 [128 S.E.2d 528, 530] ["the word 'drive,' as used in statutes of this kind, usually denotes movement of the vehicle in some direction (see Webster's Unabridged Dictionary) . . ."].)

Legislature knows how to broaden the scope of coverage when it wants to do so.[6]

Any doubt about our understanding of the word "drive" is dispelled by decades of case law holding that the word "drive," when used in a drunk driving statute, requires evidence of a defendant's volitional movement of a vehicle. (See, e.g., *Underwood* v. *State* (1931) 24 Ala.App. 191 [132 So. 606, 607]; *State* v. *Graves* (1977) 269 S.C. 356 [237 S.E.2d 584, 586-588] [*Graves*]; Annot. (1926) 42 A.L.R. 1498, 1501; Annot. (1956) 47 A.L.R.2d 570, 573; Annot. (1979) 93 A.L.R.3d 7, 15.) The analysis employed in *Graves, supra,* 237 S.E.2d 584, is typical. The court noted that the South Carolina statute—which like section 23152(a) prohibits "any person . . . who is under the influence [of alcohol, etc.], to drive any vehicle"—is penal in nature. Thus, the court reasoned, "we must approach its interpretation by invoking the rule of strict statutory construction and resolve any uncertainty or ambiguity against the State . . . ." (*Graves, supra,* 237 S.E.2d at p. 586.)

The *Graves* court observed that South Carolina's statute (like ours) was modeled after the original "Uniform Act Regulating Traffic on Highways, which is a substantial adoption of the uniform act by the same name that was approved by the National Conference of Commissioners of Uniform State Laws, 1926, as revised in 1930 . . . . This uniform act served as the basis for the motor vehicle codes of numerous states . . . ." (237 S.E.2d at p. 586.) As *Graves* noted, however, several states adopted amended versions of the uniform act and thereby prohibited an intoxicated person from "*driving or operating*" a motor vehicle. (*Ibid.*)[7] The court observed that the South Carolina Legislature—like ours—had "proscribed only driving a motor vehicle while intoxicated, and did not proscribe operating." (237 S.E.2d at p. 586.) It continued:

"The distinction between these terms is material, for it is generally held that the word 'drive,' as used in statutes of this kind, usually denotes

---

[6]We observe that our state's first "drunk driving" statute, enacted in 1913, made it illegal for an intoxicated person to "operate or drive" a vehicle. (Stats. 1913, ch. 326, § 17, p. 646.) This phasing was retained through various amendments until 1923, when the statute was revised to read as it does today, i.e., it is illegal for an intoxicated person to "drive a vehicle." (Stats. 1923, ch. 266, § 112, p. 553.) Although we have discovered no authority explaining the reason for or significance of the 1923 revision, we note that as early as that year, courts construing "drunk driving" statutes drew distinctions between the terms "driving" and "operating," and held that although "driving" requires evidence of movement, "operating" does not. (See Annot. (1926) 42 A.L.R. 1498, 1501; see also, *post,* pp. 764-767.)

[7]In 1938, the drafters of the Uniform Vehicle Code amended its language to read as it does today, making it illegal to "drive *or be in actual physical control of* any vehicle . . . ." (See Nat. Com. on Uniform Traffic Laws and Ordinances, Traffic Laws Ann. (1979) § 11-902(a)(2), p. 255 [historical note], italics added; Uniform Vehicle Code and Model Traffic Ordinance (1987) § 11-902(a), p. 65 [present provision].)

movement of the vehicle in some direction, whereas the word 'operate' has a broader meaning so as to include not only the motion of the vehicle, but also acts which engage the machinery of the vehicle that, alone or in sequence, will set in motion the motive power of the vehicle." (*Graves, supra,* 237 S.E.2d at p. 586.)[8]

*Graves* concluded that under South Carolina's statute, "the word 'drive' requires the vehicle to be in motion to constitute the offense,"[9] and invited the Legislature to amend the statute by adding the words "or operate" if it wished to broaden the scope of the drunk driving law. (237 S.E.2d at p. 586.)[10]

Although as *Graves* observed, many states originally enacted statutes similar to section 23152(a), today only six states in addition to California

---

[8] Accord, *Thomas* v. *State* (1976) 277 Md. 314 [353 A.2d 256]: " '[T]he term "driving" is encompassed within the term "operating"; but the reverse is not necessarily so. One may not drive a vehicle without operating it; but one may operate the engine or devices of a vehicle without driving it. Otherwise stated: while all driving is necessarily operation of a motor vehicle, not all operation is necessarily driving.' " (*Id.*, at p. 259, quoting *McDuell* v. *State* (Del. 1967) 231 A.2d 265, 267.) See also, e.g., *Williams* v. *State* (1965) 111 Ga.App. 588 [142 S.E.2d 409, 411] ("[T]he offense of operating an automobile while under the influence of intoxicants can be committed without driving it, but the offense of driving while under the influence can not be committed without operating the car."); *Jacobson* v. *State* (Alaska 1976) 551 P.2d 935, 937; *Gallagher* v. *Commonwealth* (1964) 205 Va. 666 [139 S.E.2d 37, 39]; *Bradam* v. *State* (1950) 191 Tenn. 626 [235 S.W.2d 801, 802-803].

[9] Other states have construed "drive" the same way.

See, e.g., *McDuell* v. *State, supra,* 231 A.2d 265, 268 (construing former Del. Code Ann. tit. 21, § 4176); *Poling* v. *State* (1973) 156 Ind.App. 145 [295 N.E.2d 635, 637] (construing former Ind. Code § 9-4-1-54 (1971)); *State* v. *Taft* (1958) 143 W.Va. 365 [102 S.E.2d 152, 154] (construing W.Va. Code § 17C-5-2); see also *Bradam* v. *State, supra,* 235 S.W.2d 801, 803 (construing former Tenn. Code Ann. § 10827); *Gallagher* v. *Commonwealth, supra,* 139 S.E.2d 37, 39 (construing Va. Code Ann. § 18.1-54).

Wisconsin has codified this "common law definition" of "drive" in a statute that proscribes "driving or operating" a vehicle while intoxicated. (*County of Milwaukee* v. *Proegler* (1980) 95 Wis.2d 614 [291 N.W.2d 608].) The *Proegler* court noted that whereas an earlier version of the statute expressly required movement of a vehicle as an element of the statutory violation, "[i]n 1977, the legislature changed the statutory scheme to differentiate between 'drive' and 'operate' . . . ." The revised statute provides: "(a) 'Drive' means the exercise of physical control over the speed and direction of a motor vehicle while it is in motion. [¶] (b) 'Operate' means the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion." (291 N.W.2d at p. 613, quoting Wis. Stat. § 346.63(3).)

The North Carolina Legislature has rejected the common law definition of "drive," and broadly defined that term as including, inter alia, "operation." Accordingly, North Carolina courts have upheld convictions under that state's "driving" statute even in the absence of evidence of volitional vehicle movement. (*State* v. *Fields* (1985) 77 N.C. App. 404 [335 S.E.2d 69, 70], applying *State* v. *Coker* (1984) 312 N.C. 432 [323 S.E.2d 343, 347] [interpreting N.C. Gen. Stat. §§ 20-138.1(a), 20-4.01(7) & 20-4.01(25)].) The Maryland Legislature has similarly redefined "drive" as including, inter alia, "operation" of a vehicle. (*Gore* v. *State* (1988) 74 Md.App. 143 [536 A.2d 735, 739] [applying Md. Transp. Code Ann. § 21-902(a)].)

[10] The South Carolina statute remains the same today. As noted below, however, other legislatures have been quick to amend "driving" statutes following narrow interpretation of that word by reviewing courts.

have a statute that prohibits simply "driving" a vehicle while intoxicated. (Colo. Rev. Stat. § 42-4-1202, subd. (1); N.M. Stat. Ann. § 66-8-102(A); N.C. Gen. Stat. § 2-138.1; Ore. Rev. Stat. § 813.010(1); S.C. Code Ann. § 56-5-2930; W.Va. Code § 17C-5-2.) Most states that had "driving" statutes have subsequently broadened them to prohibit "driving or operating" or simply "operating" a vehicle (e.g., Indiana,[11] New York[12] and Delaware[13]), or "driving or being in [or 'having'] actual physical control" of a vehicle (e.g., Arizona,[14] Wyoming[15] and Maryland[16]).

Accordingly, 43 states today have statutes that prohibit "driving *or being in actual physical control*" of a vehicle (e.g., Florida, Georgia, Washington

---

[11] See *Poling* v. *State, supra*, 295 N.E.2d 635, 637 (construing prior "driving" statute, former Ind. Code § 9-4-1-54 (1971), as requiring evidence of *volitional motion*); and *Rose* v. *State* (1976) 168 Ind.App. 674 [345 N.E.2d 257, 259-260] (construing amended statute, Ind. Code § 9-4-1-54(b) (1971), as not requiring evidence of volitional motion).

[12] See *Siff* v. *New York State Department of Motor Vehicles* (1987) 123 A.D.2d 787 [513 N.Y.S.2d 482] (noting the legislature amended N.Y. Veh. & Traf. Law § 1194, subd. 1 "by substituting 'operating' for 'driving' ").

[13] Former Delaware Code Annotated title 21, section 4111 prohibited an intoxicated person from "operating" a vehicle. In *State* v. *Prichett* (Del. 1961) 173 A.2d 886, the court construed that statute as permitting conviction of an intoxicated person who was slumped over the steering wheel of a motionless car with its engine running. (*Id.*, at pp. 891-893, construing former statute.) Thereafter the legislature revised the statute, substituting the word "drive" for "operate." (Former Del. Code Ann. tit. 21, § 4176.) The court in *McDuell* v. *State, supra*, 231 A.2d 265, noted the above-discussed distinction between the words "drive" and "operate" (*id.*, at p. 267), and concluded: "Presumably, the General Assembly was aware of [*Prichett*] and its discussion of the different meanings attributed to the statutory language here involved. Apparently, the Legislature made the changes advisedly, intending thereby to remove 'standing' violations from the operation of the Statute." (*Id.*, at pp. 267-268.) The court concluded the new section "creates a newly limited offense" (*id.*, at p. 268), and that under the new statute "the vehicle must be in motion in order for the act proscribed by the statute to be committed." (*Ibid.*) Subsequently the Delaware Legislature again revised its statute, which currently makes it illegal for a person to "drive, operate, or have in actual physical control" a vehicle. (Del. Code Ann. tit. 21, § 4177.)

[14] In *State* v. *Webb* (1954) 78 Ariz. 8 [274 P.2d 338], the court construed a revision to the Arizona drunk driving statute. It observed that former Arizona Revised Statutes Annotated section 66-402 (1939), made illegal "driving" while intoxicated. The *Webb* court noted that the prior statute had been construed to apply "only in cases where the vehicle was in motion [citations]. In enacting the new law, the word 'drive' was retained, and the words 'or be in "actual physical control" ' were added in the *disjunctive*. The conclusion we draw therefrom is that the legislature intended the present law to embrace fact situations not covered by the old, more particularly the legislature intended the law should apply to persons having control of a vehicle while not actually driving it or having it in motion." (274 P.2d at p. 339, italics in original.)

[15] In *Adams* v. *State* (Wyo. 1985) 697 P.2d 622, the court observed that by revising Wyoming Statutes section 31-5-233(a) to make it illegal to "drive, *or have actual physical control of*" a vehicle, the Legislature intended to broaden the scope of the statute to cover those "having control of a vehicle while not actually driving it or having it in motion." (697 P.2d at pp. 624-625, italics added.)

[16] Compare *Thomas* v. *State* (1976) 277 Md. 314 [353 A.2d 256] (construing former Md. Ann. Code art. 66½, § 11-902(b)), with *Gore* v. *State, supra*, 536 A.2d 735, 738-739 (construing Md. Transp. Code Ann. § 21-902(a)).

and Montana), or "driving *or operating*" a vehicle (e.g., Alaska, Mississippi, Texas, Virginia and Wisconsin), or "*operating*" a vehicle (e.g., Indiana, Massachusetts, Michigan and New Jersey),[17] and the overwhelming majority of those statutes have been interpreted as ascribing to the italicized terms a broad scope not limited to or dependent on volitional movement of a vehicle.[18] In fact, most cases uphold a finding of "operation" or "being in actual physical control" even when, as in the present case, the arrestee was found asleep, slumped over the steering wheel of an operable car with its engine running.[19]

Of our six sister states that have retained statutes that prohibit simply "driving," it appears five have directly addressed the question whether evidence of volitional movement must be established to constitute "driving." Two—South Carolina and West Virginia—have interpreted that term as requiring evidence of volitional movement. (*Graves, supra*, 237 S.E.2d 584, 586-588 [discussed *ante*]; *State* v. *Taft, supra*, 102 S.E.2d 152, 154 [volitional "movement of a vehicle is an essential element of the statutory requirement"].) North Carolina, relying on related state statutes, has determined its legislature intended that "drive" be synonymous with "operate,"

---

[17] See statutes collected in 4 Erwin, Defense of Drunk Driving Cases, *supra*, statutory appendix.

[18] See, e.g., *Flournoy* v. *State, supra*, 128 S.E.2d 528, 530-531 (construing "operate" in 1953 Ga. Laws 566, 575, art. V., § 47); *Commonwealth* v. *Uski* (1928) 263 Mass. 22 [160 N.E. 305, 306] (construing "operates" in Mass. Gen. L. ch. 90, § 24); *State* v. *Ruona* (1958) 133 Mont. 243 [321 P.2d 615, 618-619] (construing "actual physical control" in Mont. Rev. Code § 32-2142(1)(a) (1947)); *State* v. *Sweeney* (1962) 77 N.J.Super. 512 [187 A.2d 39, 44-45] (construing "operates" in N.J. Rev. Stat. § 39:4-50); *Prudhomme* v. *Hults* (1967) 27 A.D.2d 234 [278 N.Y.S.2d 67, 69-70], and cases cited (construing "operating" and "operate" in N.Y. Veh. & Traf. Law § 1192 [drunk driving statute] and *id.*, § 1194, subd. 1 [implied consent law]); *Hughes* v. *State* (Okla. Crim.App. 1975) 535 P.2d 1023 (construing "actual physical control" in Okla. Stat. tit. 47, § 11-902(a)); and *Gallagher* v. *Commonwealth, supra*, 139 S.E.2d 37, 40 (construing "operate" in Va. Code Ann. § 18.1-54)).

The Texas Court of Appeals embraces a contrary interpretation and holds volitional movement is necessary for "operation." (*Reddie* v. *State* (Tex.Ct.App. 1987) 736 S.W.2d 923, 926-927.) The Ohio trial courts appear split on the issue. (Compare *State* v. *Williams* (1969) 20 Ohio Misc. 51 [251 N.E.2d 714, 717-718] [movement required], with *State* v. *Wymbs* (1984) 10 Ohio Misc.2d 26 [462 N.E.2d 195, 196-197] [movement not required].)

[19] See, e.g., *County of Milwaukee* v. *Proegler, supra*, 291 N.W.2d 608, 612-613; *Jacobson* v. *State, supra*, 551 P.2d 935, 937-939; *State* v. *Webb, supra*, 274 P.2d 338, 340; *Hughes* v. *State, supra*, 535 P.2d 1023, 1024; *State* v. *Ruona, supra*, 321 P.2d 615, 616-618; *State* v. *Lariviere* (1963) 2 Conn.Cir. 221 [197 A.2d 529, 531-532]; *People* v. *Pomeroy* (1979) 88 Mich.App. 311 [276 N.W.2d 904, 906]; and *Commonwealth* v. *Kloch* (1974) 230 Pa.Super. 563 [327 A.2d 375, 383-384].

New Jersey has adopted a contrary view, requiring a showing of *intent to move* a vehicle. (See *State* v. *Daly* (1973) 64 N.J. 122 [313 A.2d 194, 93 A.L.R.3d 1].) Numerous courts have rejected New Jersey's position, noting that "drunk" driving or operating of a vehicle is a general intent crime. (See *State* v. *Miller* (1990) 309 Ore. 362 [788 P.2d 974, 975-978]; *Joiner* v. *State* (1955) 161 Tex.Crim. 526 [279 S.W.2d 333, 334]; *State* v. *Storrs* (1933) 105 Vt. 180 [163 A. 560, 562].)

and therefore motion need not be established. (*State* v. *Coker, supra,* 323 S.E.2d 343, 347.)[20] Finally, Colorado and New Mexico have interpreted "drive" as meaning "actual physical control," and hence not requiring evidence of movement. (*Brewer* v. *Motor Vehicle Div., Dept. of Rev.* (Colo. 1986) 720 P.2d 564, 566-567; *Boone* v. *State* (1987) 105 N.M. 223 [731 P.2d 366, 368-369].)

In light of the above history and interpretation of similar statutes throughout the country, the position taken by the Colorado and New Mexico courts is unpersuasive. Each court premised its interpretation of "drive" on the assumption that its legislature intended to define "drive" as meaning "actual physical control" of a vehicle. For this proposition each court relied exclusively on the fact that its statute—like ours (§ 305, quoted, *ante,* p. 763) and those of 20 other states[21]—defines the noun "driver" as one who " 'drives or is in actual physical control' " of a vehicle. (*Brewer* v. *Motor Vehicle Div., Dept. of Rev., supra,* 720 P.2d 564, 567, quoting Colo. Rev. Stat. § 42-1-102(22); *Boone* v. *State, supra,* 731 P.2d 366, 368, quoting N.M. Stat.Ann. § 66-1-4(B)(18).) But as we noted above (*ante,* p. 763), the presence of the disjunctive "or" in the quoted definition discloses legislative intent that a distinction be drawn between the verb "drive" and the concept of "actual physical control," and thus it is improper to conclude, as did the Colorado and New Mexico courts, that the two terms are synonymous. (See *Graves, supra,* 237 S.E.2d 584, 587 (rejecting view advanced by *Brewer* and *Boone* under identical statutory language);[22] accord, *Brewer, supra,* 720 P.2d 564, 570-571 (Erickson, J., conc.).)

■ Based on (i) the "plain meaning" of the statutory term "drive," (ii) the use of that and related terms by our Legislature in related statutes, and (iii) the interpretation of the word "drive" and related terms in numerous decisions by our sister states, we conclude section 23152 requires proof of volitional movement of a vehicle. The proposal of the DMV and its amicus curiae—i.e., that we should ignore these factors in order to effectuate what is asserted to be a better result in terms of social policy—evinces a fundamental misunderstanding about the nature of statutory construction and the

[20] The *Coker* court based its interpretation on North Carolina General Statutes section 20-138, which, unlike our statute or that of any other state, defines " 'driver' . . . simply as an 'operator' of a vehicle . . . ." (323 S.E.2d at p. 347.)

[21] See Driver Licensing Laws, *supra,* section 1-114, at pages 2-3.

[22] The *Graves* court stated: "Section 56-5-400 [of the South Carolina Code] defines 'driver' as 'Every person who drives or is in actual physical control of a vehicle . . .' It would seem clear that the statute provides two distinct definitions of 'driver,' for 'driving' and 'being in actual physical control' can describe the same activity only if we treat the phrase 'or is in actual physical control' as useless baggage. Such a construction would run counter to the principle that 'a statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous . . . .' " (237 S.E.2d at p. 587.)

role of courts in our system of government. Because Penal Code section 836, subdivision 1, provides that a warrantless misdemeanor arrest is permissible only if a public offense occurs in the arresting officer's "presence," and because the officer in this case did not see Mercer's vehicle move, we conclude Mercer was not "lawfully arrested" for a violation of section 23152(a) and thus cannot be subjected to the license revocation provisions of sections 23157 and 13353 as presently written.[23]

We emphasize that our Legislature is free to revise the relevant statutes—as have many of our sister states—to yield a result requiring license suspension or revocation on the facts of this case.[24] Although policies favoring deterrence may militate in favor of such a change, we also recognize there are legitimate policy reasons that would support a decision to retain the current narrow statutory scheme, including the policy of encouraging intoxicated drivers to stop driving and safely park their cars until they become sober. As noted above, however, this determination rests with the Legislature, and not with the courts.

In any event, we emphasize that even if the Legislature declines to amend the statutes, the police are not rendered impotent to act. ■ They may, without a warrant, arrest a person such as Mercer for "attempted drunk driving" or public intoxication (Pen. Code, § 647, subd. (f)),[25] and thereafter force the arrestee to submit to chemical testing under the authority of *Schmerber*, *supra*, 384 U.S. at pages 766-772 [16 L.Ed.2d at pages 917-920], and *Hawkins*, *supra*, 6 Cal.3d at page 761. Nor does the requirement of observed volitional movement under the implied consent/license revocation

---

[23] Like the *Music* court, we decline to interpret *Henslee*, *supra*, 168 Cal.App.3d 445, as being inconsistent with this opinion. (*Music*, *supra*, 221 Cal.App.3d at pp. 848-850 ["[A]s we read . . . *Henslee*, if the driver does not move the vehicle in the officer's presence at least a few inches, the offense of driving under the influence has not occurred in the officer's presence."].) We reject the present Court of Appeal's contrary interpretation of *Henslee*.

[24] The Legislature could, for example, exempt "drunk driving" arrests from the "presence" requirement of Penal Code section 836 (cf. § 40300.5); or it could amend the drunk driving statutes so they apply to any person who "*drives or operates*" (or who is in "actual physical control of") a vehicle; or it could amend sections 23157 and 13353 so they apply to arrests for attempted drunk driving.

If the Legislature takes action, it might also consider resolving a related problem involving interpretation of sections 13353 and 23157 that has divided the Courts of Appeal, but which is not presented in this case. (Compare *Medina* v. *Department of Motor Vehicles* (1987) 188 Cal.App.3d 744, 750-751 [233 Cal.Rptr. 557], and *Jackson* v. *Pierce* (1990) 224 Cal.App.3d 964, 967-972 [274 Cal.Rptr. 212], with *Rice* v. *Pierce* (1988) 203 Cal.App.3d 1460, 1466 [250 Cal.Rptr. 832].)

[25] On these facts it appears Mercer violated Penal Code, section 647, subdivision (f), because (i) he was intoxicated in a public place (see *People* v. *Kelley* (1969) 3 Cal.App.3d 146, 150, fn. 2 [83 Cal.Rptr. 287]) *and* (ii) he was unable to exercise care for his own safety or the safety of others (see *People* v. *Engleman*, *supra*, 116 Cal.App.3d Supp. 14, 19, and cases cited).

statutes call in question the propriety of convictions under section 23152 based on mere circumstantial evidence of vehicle movement. (See e.g., *Wilson, supra,* 176 Cal.App.3d Supp. 1, 8-9, and cases cited.)

## III.  *Conclusion*

The judgment of the Court of Appeal is reversed.

Mosk, J., Panelli, J., Kennard, J., Arabian, J., and Baxter, J., concurred. Broussard, J., concurred in judgment.