331 F.3d 93
 Charles HANRAHAN, Plaintiff-Appellee,
v.
R. DOLING, employee of the Department of Correctional Services, Donald L. Selsky, Director of the Special Housing/Inmate Disciplinary Program for the Department of Correctional Services, Defendants-Appellants,
Glenn Goord, Commissioner of the Department of Correctional Services, Ernest Stevens, Sergeant for the Department of Correctional Services,
Michael McGinnis, Superintendent of Southport Correctional Facility, Gary H. Fillion, Superintendent of Marcy Correctional Facility, James Mitchell, Deputy Superintendent of Security at Marcy Correctional Facility, John Doe, an employee of the Department of Correctional Services, Defendants.
 Docket No. 02-0169.
 United States Court of Appeals, Second Circuit.
 Argued: May 19, 2003.
 Decided: May 30, 2003.
 
 Martin A. Hotvet, Assistant Solicitor General (Eliot Spitzer, Attorney General for the State of New York, and Andrea Oser, Assistant Solicitor General, on the brief), Albany, NY, for Defendants-Appellees.
 Theresa Trzaskoma, New York, NY, for Plaintiff-Appellant.
 Before: KEARSE, STRAUB, and RAGGI, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Charles Hanrahan ("Hanrahan"), a former New York state inmate, alleges that defendant prison officials, Richard Doling ("Doling") and Donald Selsky ("Selsky") violated his procedural due process rights during the course of a Tier III disciplinary proceeding in which Hanrahan was sentenced to 120 months confinement in a Special Housing Unit ("SHU"). Defendants appeal from the May 9, 2002 decision and order of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Chief Judge), adopting in all relevant respects the report and recommendation of Magistrate Judge David R. Homer, and denying defendants' motion for summary judgment on the basis of qualified immunity. Emphasizing the fact that Hanrahan eventually served only 335 days of his 120-month SHU sentence, defendants argue that it was not clearly established at the time of the challenged conduct that disciplinary confinement for periods of less than one year implicated a protected liberty interest. Because we agree that the inquiry into whether a plaintiff has a clearly established right to due process protection should focus on the disciplinary sentence imposed at the time of the alleged due process violations, we affirm.
 
 I.
 
 2
 On July 18, 1997, a major prison riot took place at the Mohawk Correctional Facility. After the riot, a prison guard, Sergeant Stevens, identified Hanrahan as the inmate responsible for severely beating another guard, Lieutenant Prusko, during the uprising. Hanrahan was later charged with leading the prison riot, assaulting a staff member, possessing a weapon, and engaging in violent conduct. Hanrahan's Tier III disciplinary hearing was held on July 24 and July 29, 1997 before defendant Doling. Hanrahan contends that he was not provided with access to exculpatory evidence (such as videotapes of the riot and prison recreation schedules) prior to the hearing and that Doling failed to independently review this evidence during the hearing. In addition, Doling allegedly denied Hanrahan's request to call another prison guard as an alibi witness and otherwise frustrated or ignored Hanrahan's attempt to present a viable defense.[1] At the conclusion of the hearing, Doling found Hanrahan guilty as charged and proceeded to sentence Hanrahan to 120 months confinement in SHU and loss of all commissary, package, and telephone privileges for the same period. Doling also recommended that Hanrahan be denied 120 months of good time credits.[2] Hanrahan then appealed the disciplinary conviction. Defendant Selsky denied the initial appeal in October 1997 and also denied Hanrahan's subsequent request for reconsideration in February 1998.
 
 
 3
 In March 1998, Hanrahan was tried in state court on various criminal charges relating to the assault on Lieutenant Prusko. His defense lawyer was able to introduce the same exculpatory evidence which Doling and Selsky allegedly ignored, and Hanrahan was acquitted of all charges after less than an hour of jury deliberations. Another inmate, Luis Agosto, was later convicted for the assault on Prusko. Although Hanrahan's lawyer immediately wrote to Selsky to advise him of Hanrahan's acquittal, urging Selsky to reverse Hanrahan's disciplinary sentence, more than two months passed before Selsky granted Hanrahan's appeal. The official reason given for the reversal was: "Failure to interview requested employee witness who may have offered relevant testimony. No effort made to assist in the identification of witness." By the time Hanrahan was released from SHU on June 19, 1998, he had already served 335 days in solitary confinement.
 
 
 4
 After his return to the general prison population, Hanrahan filed this present action, asserting procedural due process claims under 42 U.S.C. § 1983.[3] Following the close of discovery, Doling and Selsky moved for summary judgment, arguing that they were entitled to qualified immunity, because it was not clearly established in 1997-1998 during the course of the challenged disciplinary proceeding that SHU confinement of less than one year implicated a cognizable liberty interest under Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Magistrate Judge rejected defendants' argument, agreeing with Hanrahan "that the applicable duration for purposes of determining qualified immunity is not the 335 days [that Hanrahan] actually served but the 120 month sentence imposed." The Magistrate Judge reasoned that "[s]ince a court should consider only the facts and events known to a defendant at the time of the questioned conduct, subsequent events should not be considered in determining the availability of qualified immunity .... [A]t the time Doling and Selsky imposed and affirmed Hanrahan's sentence, they reasonably believed that Hanrahan would serve the 120 month SHU sentence imposed and not the 335 days in SHU actually served. Therefore, the 120 month SHU sentence ... is the appropriate durational focus for purposes of qualified immunity."
 
 
 5
 The District Court adopted the Magistrate Judge's report and recommendation, and this appeal followed.
 
 II.
 
 6
 We review the District Court's denial of summary judgment on the ground of qualified immunity, to the extent that the denial turns on an issue of law, de novo. See Coons v. Casabella, 284 F.3d 437, 440 (2d Cir.2002). When determining whether a defendant is entitled to qualified immunity, we ordinarily begin with a two-step test. First, we determine whether the conduct attributed to defendant violated federal law. Then we determine whether that right was clearly established. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir.2002). In applying this test on a motion for summary judgment, we review the facts in the light most favorable to the plaintiff and draw all permissible inferences in the plaintiff's favor. See, e.g., Davidson v. Scully, 114 F.3d 12, 14 (2d Cir.1997) (per curiam).
 
 
 7
 In this case, where Hanrahan served 335 days of his 120-month SHU sentence, defendants concede the existence of material facts as to the first prong of the qualified immunity inquiry — whether a procedural due process violation has been established.[4] See Colon v. Howard, 215 F.3d 227, 231 (2d Cir.2000) (indicating that disciplinary confinement under typical SHU conditions for longer than 305 days requires due process safeguards). Defendants argue, however, that they are entitled to qualified immunity under the second prong of the test, because Hanrahan's right to due process protection was not clearly established at the time of the alleged violations in 1997-1998 under Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).
 
 
 8
 While it has long been clear that inmates retain due process rights in prison disciplinary proceedings, see Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (outlining the basic procedural protections that inmates must receive when subject to significant disciplinary punishment) — the Supreme Court clarified in 1995 in Sandin that such protections are only required when disciplinary punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 115 S.Ct. 2293.
 
 
 9
 The length of disciplinary confinement is one of the guiding factors in applying Sandin's "atypical and significant hardship" test. See Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir.1998).[5] Thus, for example, where the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest. Relying primarily on unpublished district court decisions interpreting Sandin, defendants argue that it was not clearly established in 1997-1998, prior to this Court's decision in Colon v. Howard, 215 F.3d at 230, that SHU confinement for periods of less than one year triggered due process protection under Sandin. Assuming that these district court decisions actually establish objective uncertainty as to the state of the governing law,[6] defendants' argument still fails for the more fundamental reason recognized by the District Court and Magistrate Judge below.
 
 
 10
 In evaluating whether a right is clearly established for purposes of the second prong of the qualified immunity inquiry, the court looks to both "the clarity of the law establishing the right allegedly violated" as well as "whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood" that his actions were unlawful. Vega v. Miller, 273 F.3d 460, 466 (2d Cir.2001); see also Poe v. Leonard, 282 F.3d 123, 132-33 (2d Cir.2002). The primary goal of qualified immunity is to permit government officials to act in areas of legal uncertainty without undue fear of subsequent liability. See Tellier v. Fields, 280 F.3d 69, 86 (2d Cir.2000); Poe, 282 F.3d at 135. In accordance with this goal, qualified immunity is analyzed from the perspective of the defendant at the time of the challenged conduct. See, e.g., Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."); Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (explaining that qualified immunity ensures that defendants have "fair notice" that their conduct is unlawful before being exposed to liability and that "[f]or a constitutional right to be clearly established, its contours `must be sufficiently clear that a reasonable official would understand that what he is doing violates that right'") (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).
 
 
 11
 During the relevant events in this case, Doling ordered and Selsky affirmed that Hanrahan would serve up to ten years in SHU confinement. Because the reasonableness of their conduct is judged "based upon the information the officers had when the conduct occurred" — the focus of the qualified immunity inquiry should be on the 120-month SHU sentence imposed on Hanrahan, not the 335 days which Hanrahan served in the SHU before his disciplinary sentence was overturned. Saucier, 533 U.S. at 207, 121 S.Ct. 2151. Moreover, analyzing qualified immunity in terms of the SHU sentence initially imposed in a prison disciplinary proceeding, regardless of the amount of time actually served, accords with not only the primary goal of fair notice underlying the qualified immunity defense, but also with fundamental purpose of due process protection — the prevention of erroneous deprivations of liberty. See generally Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Indeed, the very concept of fair notice necessarily turns on what defendants believed ex ante at the time they allegedly denied Hanrahan the procedural safeguards that may have prevented Hanrahan's mistaken SHU confinement.
 
 
 12
 Prior to Hanrahan's acquittal on related criminal charges, defendants could not have predicted that Hanrahan's disciplinary sentence would be overturned — let alone how much time would elapse before Hanrahan's administrative appeal would be granted. It would defy logic to analyze qualified immunity, as defendants urge, in terms of unpredictable subsequent events, and courts have repeatedly declined to frame the clearly established inquiry through the "20/20 vision of hindsight." Saucier, 533 U.S. at 205, 121 S.Ct. 2151 (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). We do not agree that focusing on the SHU sentence imposed in analyzing whether a right is clearly established undesirably renders the term of the SHU confinement actually served purely "academic" as defendants strenuously argue. As we have already observed, the duration of actual confinement as well as the success of any subsequent administrative appeals may well be relevant in assessing whether sufficient evidence of a due process violation has been proffered in the first place, thus eliminating any need to proceed to the second step of the qualified immunity inquiry. See Colon, 215 F.3d at 231 n. 4 (noting that the SHU "confinement actually served" may be the "appropriate focus" in determining whether an inmate has alleged a due process violation under Sandin).[7]
 
 
 13
 In conclusion, because defendants' claim of qualified immunity is properly analyzed in relation to the 120-month SHU sentence imposed on Hanrahan, rather than the 335-day sentence which Hanrahan actually served, the District Court properly denied defendants' motion for summary judgment. Whatever confusion Sandin may have left in its wake, defendants do not argue, nor could a credible argument be made, that it was not clearly established at the time of the alleged violations that disciplinary punishment, consisting of ten years of solitary confinement, triggered due process protection.
 
 III.
 
 14
 For the reasons stated above, the decision of the District Court is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Because the District Court found triable issues of fact as to whether Hanrahan was denied due process based on defendants' failure to provide him with adequate employee assistance, an unbiased hearing officer, and the opportunity to call available witnesses and present relevant documentary evidence, a ruling which is not challenged on appeal — we do not discuss the factual bases for Hanrahan's due process claims in detail
 
 
 [2]
 We note that Hanrahan was in the custody of the Department of Correctional Services serving a four to eight year sentence on assault charges. The parties do not explain why Hanrahan was punished with a term of SHU confinement longer than his maximum term of total imprisonment
 
 
 [3]
 Hanrahan also asserted other constitutional claims which are not relevant to this appeal
 
 
 [4]
 Defendants argue that Doling should only be held responsible for the 98 days which Hanrahan served in SHU before his administrative appeal was denied by Selsky. We reject the argument that the mere affirmance of a disciplinary sentence serves to cut off a hearing officer's responsibility for constitutional errors in the initial disciplinary hearingSee Walker v. Bates, 23 F.3d 652, 658-59 (2d Cir.1994), cert. denied, 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) ("[t]he rule is that once prison officials deprive an inmate of his constitutional [] rights at a disciplinary hearing and the prisoner commences to serve a punitive sentence imposed at the conclusion of the hearing, the prison official responsible for the due process deprivation must respond in damages, absent the successful interposition of a qualified immunity defense") (emphasis added). Apportioning responsibility as defendants suggest would have the perverse effect of generally immunizing the very hearing officer whose conduct is the primary basis for the procedural due process claim.
 
 
 [5]
 Although highly relevant, the duration of confinement need not be the sole consideration in analyzing procedural due process claims underSandin. See, e.g., Ortiz v. McBride, 323 F.3d 191, 195 (2d Cir.2003) (per curiam).
 
 
 [6]
 We note that the extent to which district court decisions may be taken into account in evaluating whether a right is clearly established for qualified immunity purposes is far from clearSee Anderson v. Recore, 317 F.3d 194, 197 (2d Cir.2003) (explaining that in evaluating whether a right is clearly established, the court must look to the relevant decisions of the Supreme Court and Second Circuit); cf. Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir.2001) ("A district court opinion affirmed by an unpublished table decision does not determine whether a right was clearly established.").
 
 
 [7]
 Thus, a prisoner sentenced to 120 months of SHU confinement who was released after serving only ten days in SHU would likely not be able to pursue a due process claim underSandin. Cf. Sealey v. Giltner, 197 F.3d 578 (2d Cir.1999) (holding that 101-day confinement under normal SHU conditions did not evidence atypical and significant hardship).