[No. G034264. Fourth Dist., Div. Three. Feb. 28, 2006.]

DARRELL VINCENT RITSCHEL, Plaintiff and Appellant, v.
CITY OF FOUNTAIN VALLEY et al., Defendants and Respondents.

## COUNSEL

Law Office of Daniel R. Shapiro and Daniel R. Shapiro for Plaintiff and Appellant.

Lee A. Wood & Associates, Lee A. Wood and Thomas E. Francis for Defendants and Respondents.

## OPINION

**RYLAARSDAM, Acting P. J.**—Claiming several police officers injured him when they used force to obtain a blood sample after his arrest for driving while under the influence of alcohol, plaintiff Darrell Vincent Ritschel sued defendants City of Fountain Valley and members of its police department. He alleged causes of action for violation of his civil rights under both federal and state law (42 U.S.C. § 1983 [section 1983]; Civ. Code, § 52.1, subd. (b)), plus state law claims, including assault and battery. In the first phase of a trifurcated trial, the court found the individual defendants entitled to qualified immunity as to the section 1983 claim. Based on primarily the same evidence, the court granted defendants' motion for nonsuit and dismissed the remaining state law counts. Plaintiff appeals, challenging the decision on several procedural and substantive grounds. Finding no error, we affirm.

### INTRODUCTION

After filing this appeal, plaintiff submitted a notice of his election to proceed on an appendix under California Rules of Court, rule 5.1 *without* a reporter's transcript. The one-volume appendix he prepared contains only the second amended complaint, court minute orders, his moving papers on a motion for summary judgment/adjudication that includes declarations, the parties' briefs on the qualified immunity defense, defendants' motion for nonsuit, transcripts of two police department recordings from the night of plaintiff's arrest, and portions of depositions from four police officers.

Defendants partially cured the defective record by augmenting it to include a reporter's transcript of the trial's first phase and the argument on the motion

for nonsuit. However, the present record fails to contain some essential materials, including exhibits admitted at trial and relied on by the court in makings its rulings. Other missing items include several police reports, an audiotape of plaintiff's initial detention, both the audio and videotapes of the blood withdrawal, and a copy of the police department's policy on the use of force to obtain a blood sample from an arrestee. The limited scope of the record is further aggravated by the fact plaintiff's opening brief relies on the contents of declarations submitted on the pretrial motion for summary judgment, which were apparently never introduced at trial, and contains several misstatements of the facts.

Our summary of the facts and analysis of the issues is based only on the various documents properly included in the appellate record.

## FACTUAL AND PROCEDURAL BACKGROUND

Robert Gallaugher, a Fountain Valley police officer, stopped plaintiff late one evening after observing him violate several traffic laws. Plaintiff displayed symptoms of intoxication. He admitted drinking two beers that day, plus taking some pain medication for a back injury the previous day. In his arrest report, Gallaugher stated plaintiff performed poorly on the lateral gaze nystagmus test and had a distorted perception of time. Gallaugher began conducting field sobriety tests, but stopped the procedure during the first test when plaintiff complained of pain and began shaking. Plaintiff did not have a driver's license and claimed he had left it in another vehicle. The police eventually found a suspended Nevada driver's license in plaintiff's wallet.

A second police officer, defendant Robert Sweaza, arrived with a preliminary alcohol screening breath testing device (PAS). Gallaugher and Sweaza testified at their depositions that, before administering the test, one of them read a statement to plaintiff informing him that he was being requested to take the PAS test and he could subsequently be asked to take a blood-alcohol test. Plaintiff denied being told he had a choice on whether to take the test. Plaintiff admitted telling Gallaugher and Sweaza that he had suffered a punctured lung as a result of a stabbing, but claimed he had an "almost 100 percent recovery" from the injury.

The officers testified that plaintiff failed to cooperate during the administration of the PAS test. They claimed he pretended to blow into the machine and, contrary to their instructions, placed his tongue over the mouthpiece. Gallaugher testified plaintiff also "pretended to cough and wheeze . . . ." Plaintiff admitted the officers said they thought he was being uncooperative, but testified they did not give him any directions on how to perform the PAS test. He claimed Sweaza "yanked the . . . device out of [his] mouth" "several

times" and accused him of "putting . . . [his] tongue in the end of the device." After six attempts, the police obtained two acceptable results indicating a blood-alcohol content of .092 and .095, respectively.

Gallaugher arrested plaintiff for driving while intoxicated and driving with a suspended license. The police station had equipment to conduct a breath test, but Gallaugher testified he decided not to offer plaintiff a choice between the blood and breath tests. Plaintiff claimed he asked to take a breath test, but the police refused to administer it because of his "[b]reathing problems . . . ."

A transcript of the blood withdrawal audiotape reflects defendant Dan Llorens, the on-duty watch commander, made several unsuccessful attempts to obtain plaintiff's voluntary submission to the withdrawal of a blood sample. Llorens then asked plaintiff to stand up and place his hands behind his back. Plaintiff placed his hands inside the front of his shirt. Gallaugher, Sweaza, Llorens, plus a fourth officer, pulled his hands out of the shirt; plaintiff fell to the floor. After several minutes, the officers were able to handcuff plaintiff and sit him in a chair with his arms and hands behind the backrest while a technician withdrew a blood sample. Plaintiff alleged he suffered injuries to his back, face, and wrists, as well as emotional distress, because of the officers' actions.

Plaintiff was charged with driving while intoxicated and two other misdemeanor offenses. During trial, the prosecution amended the complaint to allege a charge of reckless driving. Plaintiff pleaded guilty to the latter charge and the prosecution dismissed the remaining counts.

Plaintiff then filed this lawsuit. The first cause of action sought damages under section 1983. It alleged defendants deprived him of the "rights . . . guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution" by "refus[ing] to give [him] an opportunity to choose whether to submit to a breath test, a urine test, or a blood test of his blood alcohol level, . . . trapp[ing] and confin[ing him] in an area of the police station . . . long beyond what was reasonably necessary to administer the breath test," and then physically "forc[ing] a blood draw" from him. Based on the same conduct, plaintiff alleged state law causes of action of false imprisonment, assault and battery, negligent employment, and violation of Civil Code section 52.1. Plaintiff claims he dismissed the false imprisonment and negligent employment causes of action at trial.

During the trial's first phase on the qualified immunity defense, the court received testimony from defendants' expert witness and from plaintiff. It also reviewed the arrest and investigation reports, deposition testimony of the officers, an audio recording covering part of Gallaugher's conversation with

plaintiff during his initial detention, and audiotapes and videotapes of the blood withdrawal conducted at the police station. At the completion of this phase, the court ruled defendants were entitled to qualified immunity as to the section 1983 count. It then directed the parties to brief the effect of this ruling on the state law causes of action. Subsequently, the court entered a minute order providing, "Defendant to submit written motion to dismiss . . . ."

Defendants filed a motion for nonsuit and/or directed verdict. After reviewing the motion and plaintiff's opposition, plus allowing oral argument, the court granted the motion. The signed order declared: "It was undisputed that the facts and evidence . . . supporting Plaintiff's State law claims . . . were identical to the facts and evidence supporting his Federal Civil Rights claims under [title] 42 U.S.C § 1983 . . . . Plaintiff was given an opportunity to advise the Court of additional facts and/or evidence . . . which he intends to offer to support his State Law Claims during his case in chief. The Court determined that the proffered additional testimony consisted of an expert to impeach the testimony of Defendants' expert . . . and was insufficient to support Plaintiff's burden of proof on the State Law Claims. The Court determined that Plaintiff had presented all the evidence he intended to present to the jury and that said evidence did not support his remaining claims."

## DISCUSSION

*The Nature of the Appeal*

■ This appeal is from a signed order granting a motion for nonsuit. (Code Civ. Proc., § 581c.) Such an order constitutes a judgment of dismissal. (Code Civ. Proc., § 581d; *Costa v. Regents of University of Cal.* (1951) 103 Cal.App.2d 491, 494 [229 P.2d 867].)

Plaintiff initially attacks the judgment on two procedural grounds. First, he argues the trial court violated Code of Civil Procedure section 581c, subdivision (a) by granting nonsuit before he had made his opening statement in the jury phase of trial. But the granting of a nonsuit before opening statement is not reversible error if it is clear the plaintiff could not have prevailed even if he had presented his opening statement. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 747–749, 757–758 [135 Cal.Rptr.2d 433].) Here, the court had heard the bulk of the evidence during the qualified immunity defense phase. The court also found the "additional . . . evidence" plaintiff "intend[ed] to offer to support [his] State Law Claims" would be "insufficient to support Plaintiff's burden of proof" on the remaining causes of action.

Second, plaintiff contends the trial court erroneously considered all of the evidence and weighed it in reaching its decision, rather than viewing the

evidence in the light most favorable to him. A court ruling on a nonsuit motion must "disregard[] conflicting evidence," and "giv[e] plaintiff's evidence all the value to which it is legally entitled, . . . indulging in every legitimate inference that may be drawn from the evidence." (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1580 [47 Cal.Rptr.2d 752].) But to prevail, plaintiff must still "demonstrate *substantial* evidence in the record to support each claim asserted." (*Ibid.*) "Mere conjecture or nonsensical interpretations of evidence are not sufficient to overturn a nonsuit." (*Ibid.*)

In his opening brief, plaintiff concedes "[v]irtually all of the facts are uncontroverted or admitted by the . . . defendants . . . , except for the facts surrounding the [PAS] field sobriety test." As for that test, the trial judge stated he "didn't view [plaintiff's testimony] as inconsistent" with the police officer's testimony because, while a "valid test [result] finally emerged," plaintiff's testimony "didn't dispel the proposition that there was trouble getting it." Plaintiff's assertions that the court granted nonsuit because "it was persuaded by the defendants' evidence" and "believed the testimony of Officer Sweaza" are not supported by any citation to the record. Furthermore, as discussed *post*, this case primarily concerns whether defendants' failure to comply with California's implied consent law (Veh. Code, § 23612) is a basis for relief. Consequently, plaintiff has failed to show the trial court applied the wrong approach in granting the motion for nonsuit.

*The Section 1983 Claim*

Citing the implied consent law, plaintiff contends the police violated both his Fourth Amendment right against unreasonable searches and seizures and his Fourteenth Amendment right to due process "when they denied him [the] statutory choice of [a] breath test . . . ." He further argues defendants' qualified immunity defense lacks merit because his alleged lack of cooperation during the PAS test did not render him " 'incapable' of submitting to a breathalyzer test," and the police "should have known that they couldn't legally force [him] to submit to a blood test after he requested a breath test."

Section 1983 declares, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." But, "to permit government officials to act in areas of legal uncertainty without undue fear of subsequent liability . . . [citation]" (*Hanrahan v. Doling* (2d Cir. 2003) 331 F.3d 93, 98), courts have recognized these officials are entitled to a defense of qualified immunity

against civil rights actions under section 1983. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. [Citation.]" (*Brosseau v. Haugen* (2004) 543 U.S. 194, 198 [160 L.Ed.2d 583, 125 S.Ct. 596, 599].)

To determine if an official is entitled to qualified immunity, a court must first ask whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[.]" (*Saucier v. Katz* (2001) 533 U.S. 194, 201 [150 L.Ed.2d 272, 121 S.Ct. 2151].) When a court determines "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." (*Ibid.*) If the court concludes "a violation could be made out on a favorable view of the parties' submissions," the court must then ask "whether the right was clearly established . . . in light of the specific context of the case . . . ." (*Ibid.*)

■ An action under section 1983 "encompasses violations of federal statutory [law] as well as constitutional law." (*Maine v. Thiboutot* (1980) 448 U.S. 1, 4 [65 L.Ed.2d 555, 100 S.Ct. 2502].) Thus, section 1983 may be used to enforce rights created by both the United States Constitution and federal statutes. (*Gonzaga University v. Doe* (2002) 536 U.S. 273, 279 [153 L.Ed.2d 309, 122 S.Ct. 2268].) But conduct by an official that violates only state law will not support a claim under section 1983. (*Malek v. Haun* (10th Cir. 1994) 26 F.3d 1013, 1016; *Beard v. Baum* (Alaska 1990) 796 P.2d 1344, 1351, fn. 7; *City of Marietta v. Kelly* (1985) 175 Ga.App. 416 [334 S.E.2d 6, 7].) To prevail, plaintiff must show the officers' alleged failure to comply with California's implied consent law effectively violated his federal constitutional rights under the Fourth and Fourteenth Amendments. We review this issue in light of each constitutional provision.

*The Fourth Amendment*

In *Schmerber v. California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], a police officer arrested the petitioner for felony drunk driving. The petitioner refused to submit to an available breathalyzer test and, over his express objection, the police directed a physician to withdraw a sample of his blood. The prosecution subsequently used a chemical analysis of the blood sample to convict the petitioner of driving while intoxicated. The petitioner contended the blood withdrawal and the use of its results at trial violated several of his constitutional rights, including the Fourth Amendment right against unlawful search and seizure. The United States Supreme Court affirmed the conviction.

The Supreme Court acknowledged "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." (*Schmerber v. California, supra,* 384 U.S. at p. 767.) It agreed the police had probable cause to arrest the petitioner, but noted "the mere fact of a lawful arrest does not end our inquiry." (*Id.* at pp. 768–769.) "The interests in human dignity and privacy which the Fourth Amendment protects forbid [intrusions beyond the body's surface] on the mere chance that desired evidence might be obtained." (*Id.* at pp. 769–770.)

Nonetheless, the court upheld the blood withdrawal on an exigent circumstances theory because of the rapid elimination of alcohol from a person's blood. "The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' [citation]. . . . Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest." (*Schmerber v. California, supra,* 384 U.S. at pp. 770–771.)

Additionally, the court found "the test chosen to measure petitioner's blood-alcohol level was a reasonable one," and that it "was performed in a reasonable manner." (*Schmerber v. California, supra,* 384 U.S. at p. 771; see also *People v. Duroncelay* (1957) 48 Cal.2d 766, 771–772 [312 P.2d 690] [reaching same result under state law].) "Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. [Citation.] Such tests are commonplace . . . these days . . . . Petitioner is not one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing, such as the 'breathalyzer' test petitioner refused . . . . We need not decide whether such wishes would have to be respected." (*Schmerber v. California, supra,* 384 U.S. at p. 771.)

▬ Shortly after the United States Supreme Court decided *Schmerber,* the California Legislature enacted this state's original implied consent law, former Vehicle Code section 13353. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 758 [280 Cal.Rptr. 745, 809 P.2d 404].) In its current form, it declares that a person arrested for driving while under the influence of alcohol is obligated to submit "to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood . . . ." (Veh. Code, § 23612, subd. (a)(1)(A).) When a person is lawfully arrested for driving under the influence of a drug or the combined influence of alcohol and a drug, the arrestee is obligated to submit to a blood or urine test. (Veh. Code, § 23612, subd. (a)(1)(B).) In addition, the law provides the arrestee "has the choice of . . . the test" and the "officer shall advise the person that he or she has that choice." (Veh. Code, § 23612, subd. (a)(2)(A) & (B).)

In *Hernandez v. Department of Motor Vehicles* (1981) 30 Cal.3d 70 [177 Cal.Rptr. 566, 634 P.2d 917], the California Supreme Court summarized the legislative purposes underlying the implied consent law. "Prior to the enactment of the statute, both this court and the United States Supreme Court had explicitly held that when a person has been lawfully arrested for drunk driving the police, utilizing appropriate medical procedures, may *forcibly* remove a blood sample from the driver without his consent. [Citations.] Despite the legality of such a coercive procedure, however, the Legislature recognized that 'such an episode remains an unpleasant, undignified and undesirable one.' [Citation.] In enacting [the implied consent law], the Legislature sought to obviate these consequences for the driver and 'avoid the possible violence which could erupt if forcible tests were made upon a recalcitrant and belligerent inebriate' [citation], while at the same time preserving the state's strong interest in obtaining the best evidence of the defendant's blood alcohol content at the time of the arrest." (*Id.* at p. 77; see also *People v. Superior Court (Maria)* (1992) 11 Cal.App.4th 134, 144 [13 Cal.Rptr.2d 741].)

The evidence properly before us shows the police clearly had probable cause to arrest plaintiff for driving while under the influence of alcohol. As the trial court recognized, problems concededly arose in conducting the PAS test, but a licensed technician withdrew plaintiff's blood. Defendants admittedly did not advise plaintiff of the testing choices nor did they honor his request to take a breath test. But, even assuming the officers violated plaintiff's *statutory* rights under California's implied consent law, it was not a violation of his federal constitutional rights.

California case law unequivocally establishes a police officer's failure to comply with the implied consent law does not amount to a violation of an arrestee's constitutional rights. For example, it has been unsuccessfully asserted the implied consent law supplanted the holding in *Schmerber*. (*People v. Puccinelli* (1976) 63 Cal.App.3d 742, 746 [135 Cal.Rptr. 534] ["It is . . . clear that the right to obtain and utilize such chemical analyses under the authority of *Schmerber* has not been eliminated by the enactment of [the implied consent law]"]; *People v. Brannon* (1973) 32 Cal.App.3d 971, 975–976 [108 Cal.Rptr. 620] ["the right to obtain and utilize such chemical analyses under the authority of *Schmerber* and *Duroncelay* has not been eliminated by the enactment of (the implied consent law)"]; *People v. Fite* (1968) 267 Cal.App.2d 685, 690 [73 Cal.Rptr. 666] ["the implied consent law in no way affected the admissibility of blood alcohol tests under established case law"].)

Other cases have rejected claims that noncompliance with the implied consent law's statutory requirements amounts to a violation of an arrestee's

constitutional rights. (*People v. Esayian* (2003) 112 Cal.App.4th 1031, 1037 [5 Cal.Rptr.3d 542] ["the drawing of blood in a DUI case by a phlebotomist who does not [statutorily] qualify [as a person who may draw blood] does not amount to a violation of the Fourth Amendment . . ."]; *People v. Ford* (1992) 4 Cal.App.4th 32, 36–39 [5 Cal.Rptr.2d 189] [blood withdrawal by a technologist not properly authorized to do so by statute at a police station did not "deviate[] so far from the medical practices found to be reasonable in *Schmerber* as to render the seizure constitutionally impermissible"].) Cases have also held that "[t]he desirability of obtaining blood samples in a noncoercive manner by one of the tests provided for in [the implied consent law] may not be equated . . . with constitutionality. [Citation.]" (*People v. Puccinelli, supra,* 63 Cal.App.3d at p. 746.)

More apropos to the present appeal, case law has rejected contentions that a failure to *advise* an arrestee of the tests available or to *honor* the arrestee's choice of a particular test amounts to a constitutional violation. (*People v. Ryan* (1981) 116 Cal.App.3d 168, 181–182 [171 Cal.Rptr. 854] [upholding seizure where arresting officers physically forced arrestee to take blood test and denied him right to choose one of two alternative tests]; *People v. Puccinelli, supra,* 63 Cal.App.3d at pp. 745–746 [failure to comply with arrestee's choice of test; "evidence obtained in violation of (the implied consent law) is admissible because the statute (does not) codif(y) constitutional requirements"]; *People v. Brannon* (1973) 32 Cal.App.3d 971, 975 [108 Cal.Rptr. 620] [police officer's intentional "failure to expressly advise the defendant that he has a choice of tests, in violation of (the implied consent law) . . . involves no violation of any constitutionally protected interest"].)

 The Supreme Court succinctly summarized the scope of California's implied consent law in *Mercer v. Department of Motor Vehicles, supra,* 53 Cal.3d 753: "[T]he implied consent statute—and its attendant license suspension or revocation 'penalty'—is an adjunct to the preexisting, and still valid rule of *Schmerber* . . . . In other words, *regardless whether the terms of the implied consent statute are met,* forcible, warrantless chemical testing may occur under the authority of *Schmerber* if the circumstances require prompt testing, the arresting officer has reasonable cause to believe the arrestee is intoxicated, and the test is conducted in a medically approved manner incident to a lawful arrest." (*Id.* at p. 760.)

Thus, California decisional law holds a police officer's mere failure to comply with the requirements of this state's implied consent law does not equate with or amount to a violation of the arrestee's rights under the federal Constitution. Plaintiff relies on a federal decision, *Nelson v. City of Irvine* (9th Cir. 1998) 143 F.3d 1196, to support a contrary conclusion. There the plaintiffs

brought a section 1983 class action against a city and several of its police officers alleging, in part, they were required to submit to blood tests after being arrested for drunk driving. The district court granted the defendants' motion for judgment on the pleadings and dismissed the action.

The Court of Appeals partially reversed the judgment. One group of class members alleged they had been forced to submit to blood tests even after requesting or consenting to breath or urine tests. The court held this group of plaintiffs stated a valid claim. (*Nelson v. City of Irvine, supra*, 143 F.3d at p. 1203.) While acknowledging *Schmerber* had declined to decide whether forcing an arrestee to submit to a blood test after he or she requested an alternative test would violate the Fourth Amendment (*id.* at p. 1200), *Nelson* cited dicta from one of its earlier plurality decisions involving a claim of excessive force and the alternative test choices available under the implied consent law. (*Id.* at pp. 1201–1203.) It concluded "the [defendants'] insistence upon obtaining blood samples from . . . class members who requested or consented to undergo breath tests . . . was unreasonable if breath tests were actually available." (*Id.* at p. 1203.)

*Nelson* also held an arrestee's consent to submit to an alternative test eliminated the exigency requirement underlying the *Schmerber* exception. "When an arrestee requests but is denied the choice of an available breath or urine test, the exigency used to justify the warrantless blood test continues only because of the City's failure to perform the requested alternative test. Whenever a DUI arrestee consents to a breath or urine test, and such tests are available, the administration of either the breath or urine test would preserve the evidence and end the exigency. In such cases, because the sole justification advanced to excuse the officers from obtaining a warrant disappeared when the exigency ended, the blood tests were not only unnecessary and unreasonable, but violated the Fourth Amendment's warrant requirement." (*Nelson v. City of Irvine, supra*, 143 F.3d at p.1205, fn. omitted.)

■ The "[d]ecisions of lower federal courts interpreting federal law are not binding on state courts. [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 190 [66 Cal.Rptr.2d 123, 940 P.2d 710]; see also *People v. Sugarman* (2002) 96 Cal.App.4th at 210, 216 [116 Cal.Rptr.2d 689].) *Nelson*'s analysis is particularly unpersuasive. First, it is not supported by any federal case authority holding a police officer's refusal to honor a request to take an alternative blood-alcohol test violates the federal Constitution. Second, one of the underlying premises in *Nelson* is that California's implied consent law is a statutory implementation of the Fourth Amendment and a failure to comply with the statute equates to a federal constitutional violation. As discussed *ante*, this is not California law. (See *Mercer v. Department of Motor Vehicles, supra*, 53 Cal.3d at p. 760; *People v. Sugarman, supra*, 96 Cal.App.4th at p. 214;

*People v. Ryan, supra,* 116 Cal.App.3d at pp. 181–182; *People v. Puccinelli, supra,* 63 Cal.App.3d at p. 746; *People v. Brannon, supra,* 32 Cal.App.3d at pp. 975–976.)

Furthermore, *Nelson*'s holding that a drunk driving arrestee's mere *willingness* to consent to a particular test eliminates the exigency authorizing a warrantless seizure of the arrestee's blood is contrary to California precedent. In *People v. Sugarman, supra,* 96 Cal.App.4th 210, the arresting officer advised the defendant of his test choices and the defendant chose a breath test. After 10 unsuccessful attempts to complete it, the officer took the defendant to a hospital where a nurse drew a blood sample over the defendant's objection. The Court of Appeal affirmed his subsequent conviction, finding "[t]he record does not support" the defendant's claim "there was no need for a blood test because he cooperated by providing breath samples." (*Id.* at p. 215.) "The court could reasonably infer that [the defendant] was attempting to obstruct the breath test and [the arresting officer] did not act arbitrarily. Here, as in *Schmerber*, there was no time to obtain a warrant. Compelling him to take a blood test was a constitutionally reasonable alternative to obtain a reliable test before the blood-alcohol evidence diminished. [Citation.]" (*Ibid.*)

*Sugarman* also must be compared with *People v. Fiscalini* (1991) 228 Cal.App.3d 1639 [279 Cal.Rptr. 682], which reversed a drunk driving conviction because although the defendant voluntarily provided a urine sample, the police later forcibly obtained a blood sample from him. The appellate court found the blood test inadmissible because "the People . . . did not demonstrate sufficient need to withdraw [the defendant's] blood without his consent *after* he provided a urine sample." (*Id.* at p. 1644, italics added, fn. omitted.) Consequently, it is the arrestee's *completion* of an authorized test, not his or her *willingness* to submit to one, which eliminates the exigency.

▋ Here, plaintiff apparently did complete the PAS test. But case law has established that procedure does not suffice to eliminate the exigency. *People v. Wilson* (2003) 114 Cal.App.4th 953 [8 Cal.Rptr.3d 167] rejected the assertion that the PAS test is "the scientific equivalent of a postarrest blood, breath or urine test," citing "the Legislature's implicit finding that the tests are not equivalent, and therefore that despite the taking of the PAS test, it remains important to obtain the more reliable results of the chemical test before the evidence becomes unavailable with the passage of time. [Citation.]" (*Id.* at pp. 959–960.)

Consequently, as to the Fourth Amendment, defendants are entitled to prevail under the first prong of the qualified immunity defense. Viewing the evidence most favorably towards plaintiff, he failed to establish the individual officers' noncompliance with California's implied consent law violated his constitutional right against unreasonable searches and seizures.

## The Fourteenth Amendment

Next, plaintiff contends defendants violated his rights under the United States Constitution's Fourteenth Amendment, because the implied consent law "protected a liberty interest . . . ." This argument also lacks merit.

"A protected liberty entitlement can . . . be created by state law . . . . When a liberty interest has been created, the due process clause acts to insure that the state-created right is not arbitrarily abrogated." (*Bills v. Henderson* (6th Cir. 1980) 631 F.2d 1287, 1291.) A person lawfully arrested for driving under the influence who fails or refuses to complete one of the statutorily authorized chemical tests is subject to having his or her driving privileges suspended or revoked. (Veh. Code, § 23612, subd. (a)(1)(D).) "In our present travel-oriented society, the retention of a driver's license is an important right to every person who has obtained such a license. [Citation.]" (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 [188 Cal.Rptr. 891, 657 P.2d 383]; see also *Hernandez v. Department of Motor Vehicles* (1981) 30 Cal.3d 70, 74 [177 Cal.Rptr. 566, 634 P.2d 917].) But plaintiff did not allege or prove he was subjected to the statutory penalty in this case. In fact, he could not have done so. The record establishes as a matter of law that when arrested, plaintiff's driving privileges were already suspended.

## The Excessive Force Claim

Plaintiff also conclusorily asserts defendants violated his constitutional rights by "us[ing] excessive force to handcuff him for the blood draw . . . ."

The use of excessive force to obtain a blood sample from a resistant drunk driving arrestee amounts to a violation of both the Fourth and Fourteenth Amendments. (*People v. Sugarman, supra,* 96 Cal.App.4th at p. 216; *Carleton v. Superior Court* (1985) 170 Cal.App.3d 1182, 1187 [216 Cal.Rptr. 890]; *People v. Ryan, supra,* 116 Cal.App.3d at p. 183.) But the record is insufficient to permit adequate review of the trial court's conclusion the officers did not use excessive force.

■ An appellate court begins with the presumption the judgment is correct (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 [25 Cal.Rptr.3d 379]) and the appellant must prepare a record that adequately establishes the trial court committed prejudicial error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932]; *Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46 [8 Cal.Rptr.3d 614].) "Obviously, . . . the presentation of a record which is clearly insufficient to enable a reviewing court to determine whether or not the trial court was correct in its ruling is not the equivalent of demonstrating that the trial court

was in error. This is particularly true when it is noted that ' "It is the action of the court that is presumed to be correct and this presumption obtains even though the reasons given may be bad." ' [Citations.]" (*Conner v. Rose* (1963) 219 Cal.App.2d 327, 329 [32 Cal.Rptr. 919], italics omitted; see also *Crummer v. Zalk* (1967) 248 Cal.App.2d 794, 796 [57 Cal.Rptr. 185].)

█ The trial court received into evidence and reviewed both an audiotape of plaintiff's conversation with the police before and during the blood withdrawal and a videotape of the incident. When plaintiff raised the excessive force claim during the hearing on defendants' motion for nonsuit, the trial judge declared, "I looked at that videotape and I read the transcript . . . , and giving you my best shot, if a jury found that was excessive force, I don't believe I could allow that to stand . . . ." As noted, plaintiff failed to include either the audio- or the videotape of the blood withdrawal in the record. The woefully inadequate record prepared by plaintiff fails to support his claim that a question of fact exists concerning defendants' purported use of excessive force in obtaining the blood withdrawal. Thus, even assuming a violation of plaintiff's constitutional rights could otherwise be shown, under the foregoing case law the rights purportedly violated were not clearly established. The trial court properly dismissed plaintiff's section 1983 claim on the basis of the qualified immunity defense.

*The State Law Claims*

█ Plaintiff also sought to recover damages against defendants on state law causes of action alleging assault and battery, plus a violation of his civil rights under Civil Code section 52.1, which allows a suit for damages "[i]f a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." The trial court dismissed these claims after finding the evidence submitted during the trial on defendants' qualified immunity defense plus the additional evidence identified in plaintiff's offer of proof were insufficient to allow him to proceed.

█ Even before the United States Supreme Court had decided *Schmerber*, the California Supreme Court had rejected both due process and search and seizure objections to the unconsented withdrawal of blood samples of people lawfully arrested for driving while under the influence. "The extraction of blood for testing purposes . . . without consent cannot be regarded as an unreasonable search and seizure where, as here, the extraction is made in a medically approved manner and is incident to the lawful arrest of one who is reasonably believed to have [driven while under the influence]." (*People v.*

*Duroncelay, supra,* 48 Cal.2d at p. 772; see also *People v. Haeussler* (1953) 41 Cal.2d 252, 260 [260 P.2d 8], overruled on other grounds in *People v. Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905] ["The taking of a blood test, when accomplished in a medically approved manner, does not smack of brutality"].) Thus, the right to obtain a blood sample in a medically approved manner from a lawfully arrested drunk driver existed before enactment of the implied consent law and retained its vitality after the statute's passage. (*Mercer v. Department of Motor Vehicles, supra,* 53 Cal.3d at p. 760.)

 Police officers are entitled to employ reasonable force to obtain a blood sample from a lawfully arrested drunk driver. (Pen. Code, § 835a ["Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance"]; Gov. Code, § 820.2 ["a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused"].)

 An appellate court's review of a judgment after the grant of a nonsuit "must be based on the whole record, not just excerpts chosen by the appellant." (*Kidron v. Movie Acquisition Corp., supra,* 40 Cal.App.4th at p. 1581.) While the appellate court, like the trial court, "views the evidence in the light most favorable to appellant" (*Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1327 [96 Cal.Rptr.2d 364]; see *Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657 [56 Cal.Rptr.2d 700]), if the appellant fails to present a record that contains all of the evidence before the trial court, the appellate court's ability to review evidentiary issues is limited. (*Hodges v. Mark, supra,* 49 Cal.App.4th at p. 657.)

Plaintiff does not dispute that defendant police officers lawfully arrested him for driving under the influence. Except as to the alleged use of excessive force, plaintiff also does not claim the blood withdrawal was performed improperly as discussed *ante,* the trial court expressly found that plaintiff failed to establish even the existence of a factual question concerning whether the force used in this case was unreasonable under the circumstances. (*Carleton v. Superior Court, supra,* 170 Cal.App.3d at p. 1191 [use of six officers and "a temporary carotid restraint," although "approach[ing] the brink of excessiveness, . . . was not excessive"]; *People v. Ryan, supra,* 116 Cal.App.3d at p. 183 [evidence that "appellant was restrained by five police officers while a technician removed the blood sample from his left arm" without any showing the officers "introduced any wantonness, violence or beatings" found valid use of necessary force "to overcome appellant's resistance"].) Consequently, plaintiff did not meet his burden of proof

(*Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1272–1274 [74 Cal.Rptr.2d 614]) to show defendants' conduct violated his rights under state law.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

O'Leary, J., and Ikola, J., concurred.

A petition for a rehearing was denied March 22, 2006, and appellant's petition for review by the Supreme Court was denied May 17, 2006, S142590.