Filed 5/19/15  P. v. Rosas CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RENE ROSAS,<br><br>    Defendant and Appellant. | 2d Crim. No. B255739<br>(Super. Ct. No. F470906)<br>(San Luis Obispo County) |

A jury found Rene Rosas guilty of vehicular manslaughter without gross negligence while intoxicated.  (Pen. Code, § 191.5, subd. (b).)  The court sentenced Rosas to four years and suspended the final year.  We reverse.  There is no evidence Rosas was driving at the time of the accident.

FACTS

Rosas brought his motor home to an auto repair shop owned by Ronald Kelsey in September 2010.  Rosas had been having trouble with the motor home.  It rolled when the transmission was placed in park.

Susan Booth, Kelsey's sister-in-law and employee, saw Rosas go into the motor home and Kelsey go under the driver's side rear tires.  She saw Rosas start the motor home and the motor home roll backwards one to two feet onto Kelsey's back.  Booth and Kelsey screamed.  Rosas moved the motor home forward.

The screams brought another employee and two neighboring shop owners to the site. One of the neighboring shop owners saw Rosas behind the motor home steering wheel, "hanging out the window," asking "what happened?" The neighboring shop owners pulled Kelsey's body from under the mobile home and administered "C.P.R." until the police arrived. Kelsey died of blunt force trauma. His injuries were consistent with being crushed by a leveling jack stand under the motor home.

Sergeant Michael Martinez of the Arroyo Grande police department conducted an accident investigation. Martinez believed that a chock behind the front passenger tire was in place when the accident happened. It bore tire treads and had dirt pushed up against it. Other chocks were added after the accident. The motor home moved a total of 56 inches backward and 32 inches forward.

Rosas told the police that initially Kelsey got underneath the motor home and had Rosas shift through the gears while the engine was off. Then Kelsey told Rosas to do the same thing with the engine on. Rosas replied, "Are you crazy? Seriously? Kelsey responded, "Yeah. Just keep your foot on the brake? Rosas said he asked, "Are you sure?" and Kelsey replied, "Yeah."

Rosas started the engine. He said he had his foot on the brake when he put the motor home in gear. He said the transmission got stuck in reverse. He said the motor home moved even though he had his foot on the brake. Police drove the motor home after the incident. They found nothing wrong with the brakes.

Officer Vincent Johnson of the Arroyo Grande police department investigated Rosas for driving under the influence. Rosas admitted that he had taken a "couple of shots" of whiskey before the accident and that he felt "a little buzzed." Rosas also admitted that he had used marijuana earlier that day and used methamphetamine between one and three days before.

Johnson noticed Rosas' color was flushed, his eyes were bloodshot, his speech was slurred and he had the odor of alcohol on his person. Johnson

conducted a field sobriety test. Rosas forgot the instructions for a part of the test and swayed during a balance test.

A blood test showed that Rosas had a blood alcohol level of .05, and 0.33 milligrams per liter of methamphetamine. The therapeutic dose of methamphetamine is .01 to .05, and the potentially toxic level is .02 to .05. Toxicologist Bill Posey testified that high levels of methamphetamine can contribute to the effects of alcohol.

*Defense*

Mechanical Engineer, Michael Stapleford, testified for the defense. Based on the age of the motor home and Rosas' statement, Stapleford opined that the motor home suffered from master cylinder bypass. It allowed the motor home to roll even though Rosas had his foot on the brake.

Stapleford also testified there was only one small wheel chock in place at the time of the incident. That chock was not sufficient to keep the motor home from rolling. Industry standard is to use large steel or rubber chocks as high as 12 inches.

Stapleford testified that the industry standard is that the technician has primary responsibility for safety and customers are generally not allowed in work areas.

Drug and alcohol consultant Felix D'Amico testified he reviewed a video of the field sobriety test. He saw nothing in the test that indicated Rosas was under the influence. D'Amico also criticized the way Johnson conducted portions of the test.

Toxicologist Okorie Okorocha testified that a 0.33 methamphetamine level was not toxic for everybody and would not increase the effects of alcohol. At the time of the accident, Rosas' blood alcohol level could have been .02. Video of the field sobriety test showed Rosas was not impaired.

3

DISCUSSION

I.

Rosas contends there is no substantial evidence that he was driving at the time of the accident.

Penal Code section 191.5, subdivision (b) provides: "Vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of [s]ection 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, but without gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, but without gross negligence."

In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.) We have no power on appeal to reweigh the evidence or judge the credibility of witnesses. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) We must affirm if we determine that any rational trier of fact could find the elements of the crime or enhancement beyond a reasonable doubt. (*People v. Johnson*, *supra*, at p. 578.)

Rosas cites *Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, for the proposition that driving requires a vehicle to undergo a volitional movement. In *Mercer*, the question was whether for the implied consent law to apply, the arresting officer must see the vehicle move. In holding that the arresting officer must see the vehicle move, the court noted that the offenses to which the implied consent law applies require the defendant "'to drive a vehicle.'" (*Id.* at p. 759.) The court stated, "Any doubt about our understanding of the word 'drive' is dispelled by decades of case law holding that the word 'drive' when used in a drunk

4

driving statute, requires evidence of a defendant's volitional movement of a vehicle. [Citations.]"  (*Id.* at p. 764.)

Here there was no evidence of Rosas' volitional movement of the motor home.  At the time of the accident Rosas was following, or at least attempting to follow, Kelsey's directions.  Both Rosas and Kelsey were aware that if the motor home moved, it could have disastrous consequences.  At least one wheel was chocked, albeit inadequately, to prevent movement.  Neither Kelsey nor Rosas wanted the motor home to move.

The People argue Rosas knew the brakes were faulty.  Rosas knew that the parking brake did not function and that the motor home would roll even with the transmission in park.  But there is no evidence Rosas knew the motor home would move even when he had his foot on the brakes.  In fact, the brakes worked when the police tried them.

The movement of the motor home was not volitional.  There is no evidence Rosas was driving within the meaning of Penal Code section 191.5.

The judgment is reversed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

5

John A. Trice, Judge

Superior Court County of San Luis Obispo
_____


David Andreasen, under appointment by the Court of Appeal, Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Kimberley J. Baker-Guillemet, Deputy Attorney General, for Plaintiff and Respondent.