Filed 5/5/17

CERTIFIED FOR PUBLICATION

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

APPELLATE DIVISION

| | | |
|---|---|---|
| THE PEOPLE, | ) | AD-5574 |
| Plaintiff and Respondent, | ) ) | (Super. Ct. No. SM399013A) |
| v. | ) ) | |
| SAMUEL HING-MING LING, | ) | **OPINION** |
| Defendant and Appellant. | ) ) ) | |

APPEAL from an order of the Superior Court of San Mateo County, Richard H. Du Bois, Judge.  Reversed and remanded.

## I.  INTRODUCTION.

In 1966, the United States Supreme Court ruled that a nonconsensual blood draw taken from a suspect arrested on suspicion of driving under the influence of alcohol did not violate the Fourth Amendment because exigent circumstances existed that allowed for a blood draw to be conducted in a reasonable manner incident to the defendant's arrest.  (*Schmerber v. California* (1966) 384 U.S. 757, 770-71 (*Schmerber*).)  Almost fifty years later in 2013, the United States Supreme Court ruled that a nonconsensual blood draw taken from a suspect arrested on suspicion of driving under the influence of alcohol *violated* the Fourth Amendment after concluding that exigent circumstances, which could have provided an exception to the warrant requirement,

1

could not be presumed in every case where an individual has been arrested for suspicion of driving under the influence of alcohol, despite the natural dissipation of alcohol in the bloodstream. (*Missouri v. McNeely* (2013) 133 S.Ct. 1552 (*McNeely*).) During the intervening years between these two decisions, California enacted and amended statutes intended to obtain cooperation from individuals who had been arrested for suspicion of driving under the influence of alcohol during chemical tests of their blood alcohol levels in response to the holding in *Schmerber*. Although referred to as "implied consent," the legislation was an attempt to provide law enforcement officials with a tool to secure voluntary submission to a chemical test and to eliminate the potential for violence inherent in physically subduing a suspect who might otherwise resist a chemical test. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 760.)

For nearly fifty years in California, countless prosecutions arising from arrests for driving under the influence of alcohol resulted in a myriad of legal challenges. The corresponding rulings uniformly abided by the interpretation of *Schmerber* that a warrantless compulsory seizure of blood for the purpose of a blood-alcohol test was lawful if the procedure was conducted in a reasonable, medically approved manner, conducted incident to a lawful arrest, and based upon a reasonable belief that the arrestee was intoxicated. (*People v. Jones* (2014) 231 Cal.App.4th 1257, 1263.) Implicit in these decisions was the presumption that exigent circumstances existed in every case where a suspect was arrested for driving under the influence of alcohol. Given the clarification of *Schmerber* in *McNeely*, Fourth Amendment challenges to blood draws must now be viewed through a fresh lens that is unencumbered by the past presumption of an existing exception to the warrant requirement. The holding in *McNeely* now requires trial courts to approach such constitutional challenges from a new posture, where the blood draw can no longer be presumed lawful absent some showing that the manner in which the blood draw was taken violated constitutional rights. Consequently, because *McNeely* prohibits the presumption of exigent circumstances, trial courts must acknowledge that every driving under the influence prosecution may be subject to the holding of *McNeely* to the extent that every blood draw challenged as a violation of the Fourth Amendment must now be supported by

evidence of a warrant or an exception to the warrant requirement.

The instant appeal presents just such a warrantless blood draw, where *McNeely* does not require a particular outcome, as the defendant did not expressly refuse a chemical test, but does require that the People sufficiently support with evidence some exception to the warrant requirement, which would have been unnecessary prior to *McNeely*. In other words, the challenged blood draw here is not ultimately lawful or unlawful under *McNeely*, but, ultimately, this challenged blood draw must be specifically justified by evidence of an exception to the warrant requirement because of *McNeely*. Here, the People rely solely on consent as an exception to the warrant requirement. An examination of the record reveals that the People failed to establish under the totality of the circumstances that defendant consented to a chemical test. Consequently, we reverse the order denying the motion to suppress and direct the trial court to enter a new order granting the motion to suppress the evidence obtained as a result of the warrantless blood draw.

## II. FACTS AND PROCEDURAL BACKGROUND.

Defendant Samuel Hing-Ming Ling appeals from the order denying his motion to suppress.[1] At the suppression hearing, defendant did not contest the lawfulness of his initial traffic stop. Instead, defendant challenged only the actions subsequent to the traffic stop.

At the hearing on defendant's motion, California Highway Patrol Officer Jeremy Watson was the only witness, and the following facts are based on his testimony. Officer Watson was on duty on June 13, 2015, at approximately 4 a.m., near the intersection of Highway 101 and Highway 92, when he conducted a traffic stop of a black 2013 Honda Accord driven by defendant. When the officer made contact with defendant, the officer smelled the strong odor of an alcoholic beverage emanating from the vehicle. There were two passengers in the vehicle,

---

[1] By failing to file his motion to suppress no later than 45 days after his arraignment, defendant arguably forfeited his right to pretrial review of the denial of his motion. (Penal Code, § 1510.) However, the People did not move to dismiss defendant's pretrial appeal on the basis that he failed to comply with Penal Code section 1510. Therefore, we need not address that issue. (*People v. Harris* (2015) 234 Cal.App.4th 671, 677.)

3

and the officer could not tell from whom the odor of alcohol was emanating. Defendant was unable to provide the requested driver's license, registration or insurance to the officer.

The officer asked defendant to step out of the vehicle and observed that defendant's eyes were red and watery and that his speech was slow and slurred. The officer smelled the odor of alcohol emanating from defendant's person. Defendant and the People stipulated that the officer concluded that defendant's performance on four field sobriety tests was unsatisfactory, which gave the officer further reasonable suspicion to conduct the driving under the influence ("DUI") investigation.

The officer informed defendant that the PAS test was the last voluntary field sobriety test. The officer additionally told defendant that the PAS test was not the test required by the implied consent law. The officer began to administer the PAS test without waiting for defendant to indicate whether he would submit to the test. The results of the PAS test were .144, .177, and .159, and the results were admitted solely for purposes of the officer's subsequent conduct and not for the truth of the matter asserted.

The officer then arrested defendant based on the officer's observations and the results of the field sobriety tests. The officer handcuffed defendant and placed him in the rear of the patrol vehicle. The officer then advised defendant of implied consent by telling defendant, "Because you're under arrest for DUI, you have to submit to a chemical test, which is a test of either your breath or your blood." The officer's communication with defendant regarding implied consent was limited to the instruction that defendant had to submit to a blood or breath test. The officer did not advise defendant of the consequences of failing to submit to a chemical test.

Initially, defendant did not choose either chemical test. The officer discussed with defendant the characteristics of the blood and breath tests. After this discussion, defendant did not indicate either that he did or did not want to provide a blood or a breath sample. Within a couple of minutes, the officer drove defendant from the scene, and at that time, defendant still had not elected a blood or a breath test.

The officer had three choices of places to transport defendant: First Chance, the Maguire Correctional Facility or the Redwood City California Highway Patrol ("CHP") Station. The

4

officer drove defendant to the Redwood City CHP Station. Defendant made no election of a chemical test during the drive to the Redwood City CHP Station.

When they arrived at the Redwood City CHP Station, the officer placed defendant in the briefing room. The only chemical test that can be conducted at the Redwood City CHP Station is a blood test. The officer then called for someone to draw defendant's blood. At this time, defendant still had made no indication that he wanted a particular chemical test or any test. Defendant's blood sample was taken, and the officer went through an 18-item checklist during the blood draw. The officer observed no complications and no appearance of pain from defendant during the blood draw. Although the officer initially testified that Defendant chose a blood test, he agreed on cross-examination that a more accurate description would be that defendant "submit[ted] to a blood draw."

After the People and Defendant had made their initial arguments, the trial court stated:

> The concern the Court had, and I was a little confused over the evidence, was it doesn't appear that he was given a choice between a breath and a blood test. It doesn't appear that he made a choice. And then the officer ended up in a place where the blood test was the only test available. And the totality of the evidence would show that he certainly didn't consent to taking that test. Whether he had the free choice or not, I'm not too sure of, but I don't know if that goes to the Fourth Amendment protection against unlawful search and seizures or not.
> Do you have anything additional to add to that? I mean, I agree with you. It sounds like he was there, he consented to the test. And I'm not sure if he intelligently chose that test or another test under that factual situation.

After further argument, the trial court denied the motion to suppress without further elaboration. Defendant filed the instant appeal.

### III. DISCUSSION.

On appeal, defendant challenges only the warrantless blood draw. Defendant contends that the blood draw violated his Fourth Amendment rights because it was conducted without a warrant and because the People failed to establish any exception to the warrant requirement. We agree, and, therefore, reverse the trial court's order denying the motion to suppress the blood draw evidence. Given our conclusion with respect to the constitutionality of the blood draw, we need not address defendant's second contention that he was denied the right to fully litigate the motion.

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (*People v. Letner* (2010) 50 Cal.4th 99, 145.)

The People contend that the blood draw was constitutional because defendant consented to it. "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. (*Bumper v. North Carolina* (1968) 391 U.S. 543, 548.) "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." (*Ibid*.)

Here, the People simply assert that defendant consented to the blood draw. The People contend that defendant chose a blood test without making any indication that he did not want to provide a blood or breath sample. The People concede that only a blood test was available at the Redwood City CHP office, but assert that no evidence at the hearing established that this fact was communicated to or otherwise known by defendant. The People further contend that there was no evidence that the officer would have refused to transport defendant elsewhere had defendant requested a breath test. The People contend that because there was no evidence that defendant refused or revoked his consent or that he resisted the blood draw procedure in any manner, the warrantless blood draw was consensual under the Fourth Amendment. The People assert no other theory to justify the constitutionality of the blood draw.[2]

"To be effective, consent must be voluntary." (*People v. Harris* (2015) 234 Cal.App.4th 671, 989.) "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 227.) "While knowledge of

---

[2] Although the People initially set forth in their respondent's brief the additional theory that the evidence from the blood draw was admissible under the inevitable discovery doctrine, the People withdrew that theory at the hearing.

the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent. As with police questioning, two competing concerns must be accommodated in determining the meaning of a 'voluntary' consent—the legitimate need for such searches and the equally important requirement of assuring the absence of coercion." (*Ibid.*) Thus, the analysis naturally involves distinguishing consent from assent. (*People v. Fields* (1979) 95 Cal.App.3d 972, 977.) "Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another ... [Assent] means mere passivity or submission, which does not include consent." (*Ibid.*)

"Where, as here, the prosecution relies on consent to justify a warrantless search or seizure, it bears the 'burden of proving that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority.'" (*People v. Zamudio* (2008) 43 Cal.4th 327, 341.) The People fail to point to any evidence in the record showing that defendant consented to the blood draw nor could they. To summarize, the evidence established that defendant was placed under arrest, handcuffed, and put into a police vehicle. Defendant was then told that he had to submit to a chemical test. He never expressed any choice for a test nor did he vocalize any words whose meaning could be construed as consent to any chemical test. He was transported to a location where his blood was drawn, and he offered no resistance to the administration of the blood draw. The officer characterized defendant's conduct as "submit[ting] to a blood draw." Thus, there was no manifestation of consent. The evidence instead shows that defendant submitted to a blood draw and that this submission was due to the officer's expression of lawful authority.

The People effectively contend that defendant's lack of physical or vocal resistance constitutes consent. However, this contention is based on a single fact and ignores the totality of the circumstances showing acquiescence to lawful authority, which is not consent. (See, e.g., (*Florida v. Royer* (1983) 460 U.S. 491, 497; *Schneckloth*, *supra*, 412 U.S. 218, 229-230; *Bumper*, *supra*, 391 U.S. 543, 548-49.) Indeed, where the court in *People v. Harris*, *supra*, 234 Cal.App.4th 671, 689, rejected the defendant's contention that advising a motorist of the lawful

consequences of refusing a chemical test rendered submission to the test involuntary, the court explained: "the *failure* to disclose accurate information regarding the potential legal consequences of certain behavior would seem to be a more logical basis for a defendant to assert that his or her decision to engage in that behavior was coerced and involuntary." Further, when the People's theory is taken to its logical conclusion, an unconscious individual could be characterized as giving consent to a chemical test by remaining unconscious after being told that he has to submit to a chemical test. As the court in *Carrington v. Superior Court* (1973) 31 Cal.App.3d 635, 641, most eloquently expressed, "It needs no citation of authorities to state that an unconscious man is incapable of giving consent."

The determination that under these facts defendant did not consent to the blood draw is further supported by the rationale expressed in *Bumper*. There, the United States Supreme Court held that there could be no consent where that "consent" was given only after the official conducting the search asserted that he possessed a search warrant. "A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." (*Bumper*, *supra*, 391 U.S. 543, 548-49.)

While there have been attempts to distinguish this holding in *Bumper* based on the final phrase: "if it turns out that the warrant was invalid," the quoted language from cases cited in the footnote immediately following this phrase are instructive. (*Bumper*, *supra*, 391 U.S. 543, 549 fn. 14.) In the footnote, the Supreme Court quotes *U. S. v. Elliott* (D. Mass. 1962) 210 F.Supp. 357, 360: "Orderly submission to law-enforcement officers who, in effect, represented to the defendant that they had the authority to enter and search the house, against his will if necessary, was not such consent as constituted an understanding, intentional and voluntary waiver by the defendant of his fundamental rights under the Fourth Amendment to the Constitution." (*Id*. at p. 549 fn. 14.) In the footnote, the Supreme Court also quotes *Bull v. Armstrong* (1950) 254 Ala. 390, 394: "One is not held to have consented to the search of his premises where it is accomplished pursuant to an apparently valid search warrant. On the contrary, the legal effect is that consent is on the basis of such a warrant and his permission is construed as an intention to abide by the law and not resist the search under the warrant, rather than an invitation to search."

8

(*Id*. at p. 549 fn. 14.)  Finally, the Supreme Court in footnote 14 quotes *Meno v. State* (1925) 197 Ind. 16, 24: "One who, upon the command of an officer authorized to enter and search and seize by search warrant, opens the door to the officer and acquiesces in obedience to such a request, no matter by what language used in such acquiescence, is but showing a regard for the supremacy of the law. . . .  The presentation of a search warrant to those in charge at the place to be searched, by one authorized to serve it, is tinged with coercion, and submission thereto cannot be considered an invitation that would waive the constitutional right against unreasonable searches and seizures, but rather is to be considered a submission to the law." (*Id*. at p. 549 fn. 14.)

The cases quoted in the footnote make clear that submission to a search warrant cannot be equated with consent.  Instead, the described conduct is no more than submission to the law.  Of particular importance is the understanding that the individual believing in the existence of a valid search warrant reasonably perceives no possibility of preventing the corresponding intrusion.  When police assert that they possess a valid search warrant, they effectively represent that "they ha[ve] the authority to enter and search the house, against [their] will if necessary." (*Bumper*, *supra*, 391 U.S. 543, 550.)  Likewise, the officer's statement to defendant, who is under arrest, that he has to "submit to a chemical test," communicates a reality where the chemical test will be conducted against Defendant's will, if necessary.  It should not be ignored that for decades prior to the ruling in *McNeely*, forcible, warrantless blood draws were permissible.  Thus, absent evidence to the contrary, it cannot be presumed that individuals under arrest could reasonably construe a direction from an arresting officer that they must take some action as a mere query as to whether they will voluntarily consent to it.  Consequently, the totality of the circumstances shows defendant did not consent to the blood draw.

We concede that after decades of blood draws in California passing constitutional muster under similar factual scenarios, it may be difficult to now conceive of such a search as violating the constitution or conceive of the officer's actions as violating defendant's constitutional rights.  Yet, even though peace officers are not required to anticipate legal rulings, they may only rely on binding legal precedents.  *McNeely* has effectively eliminated decades of them.  Additionally, this Court notes that although the actions of the arresting officer failed to comply with the

9

requirements of the implied consent law, no court has held that such a failure rises to the level of a constitutional violation, and we do not so hold now. However, while not equating a failure by peace officers to abide by the requirements of the implied consent law with a constitutional violation, effectively, their level of compliance with the implied consent law will likely be considered as part of the totality of the circumstances when determining the constitutionality of blood draws that the People attempt to justify by consent. Evidence showing officers explaining the implied consent law so that those arrested for suspicion of DUI understand that a blood draw will not be compelled against their will bolster a subsequent assertion that the blood draw was voluntarily consented to while evidence showing that officers asserted only the requirement of a blood draw will undercut such an assertion of consent. Ultimately, the determination of the lawfulness of any chemical test, such as the chemical test conducted here, will be based on a consideration of the totality of all the circumstances.

## IV. DISPOSITION.

Consequently, we reverse the order denying the motion to suppress and direct the trial court to enter a new order granting the motion to suppress the evidence obtained as a result of the warrantless blood draw.


Dated: _____          _____
                                                            Davis, III, P. J.


We concur:



_____
Miram, J.



_____
Swope, J.


10

Trial Court: Santa Mateo County Superior Court

Trial Judge: Hon. Richard H. Du Bois

Counsel:

Stephen M. Wagstaffe, District Attorney, Kimberley Perrotti, Deputy District Attorney and Mary Louise Christinsen, Deputy District Attorney, for Plaintiff and Respondent.

Law Offices of Marsanne Weese, Marsanne Weese, for Defendant and Appellant.